96 F.3d 1448
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
SOUTHEAST COAL COMPANY and Old Republic Insurance Company, Petitioners,
v.
Brack COMBS, and Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 No. 95-3054.
 United States Court of Appeals, Sixth Circuit.
 Aug. 30, 1996.
 
 On Petition for Review from the Benefits Review Board, United States Department of Labor, No. 92-0700 BLA.
 Ben.Rev.Bd.
 REVERSED.
 Before: NELSON and RYAN, Circuit Judges; and SPIEGEL, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Petitioners, Southeast Coal Company and its insurer, seek review of a decision and order of the United States Department of Labor's Benefits Review Board affirming the award of black lung disability benefits to claimant Brack Combs. Because we conclude that the administrative law judge's award of benefits is not supported by substantial evidence of a material change in conditions, we reverse the award and remand for further consideration.
 
 I.
 
 2
 This appeal is brought by Southeast Coal Company and its insurer who seek relief from an award of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945.
 
 A.
 
 3
 The Black Lung Benefits Act was enacted, in part, to facilitate and liberalize compensation to miners totally disabled by coal mine pneumoconiosis. 30 U.S.C. § 901; Youghiogheny & Ohio Coal Co. v. Webb III, 49 F.3d 244, 247 (6th Cir.1995). Because the benefits program established by Congress "has been developed through several statutory enactments, different rules govern claims filed during different periods of time." Mullins Coal Co. v. Director, 484 U.S. 135, 138 (1988) (footnote omitted). For instance, claims filed after April 1, 1980, are governed by "permanent criteria," whereas claims filed prior to April 1, 1980, are governed by the "interim regulations." Id. at 139. Because his claim was filed in 1982, Combs's claim must be evaluated under the "permanent criteria" of 20 C.F.R. pt. 718.
 
 B.
 
 4
 Claimant Combs was born on July 4, 1924. The parties agreed that Combs established a coal mine employment record of at least fourteen years. Combs retired from his job as a cutting machine operator at Southeast in December 1974 when he broke his ankle. He has breathing problems, as well as a heart condition and stomach problems. His most recent claim for benefits has been in the process of administrative adjudication for more than thirteen years, and he has not been represented by counsel since the ALJ issued the award in 1985.
 
 
 5
 The Board summarizes claimant Combs's efforts to obtain disability benefits as follows:
 
 
 6
 Claimant first filed a part B claim with the Social Security Administration (SSA) on March 17, 1970.1 This claim was denied on March 24, 1971 and claimant subsequently filed an election card seeking SSA review of his Part B claim on April 28, 1978. This claim was denied on June 7, 1979. In addition, claimant filed a Part C claim with the Department of Labor on January 9, 1975. This claim was initially denied by the deputy commissioner on August 10, 1977 and then denied again on March 1, 1978. Claimant's Part C claim was then reviewed under the Black Lung Benefits Reform Act of 1977 (1977 Amendments) by the deputy commissioner and again denied on September 29, 1980. Claimant subsequently filed a new Part C claim for benefits on August 20, 1982. This claim was denied by the deputy commissioner on January 17, 1983. A hearing was held before the administrative law judge on December 14, 1984 and benefits were awarded on July 25, 1985....
 
 
 7
 (Footnote in original.) Thus, claimant Combs filed a claim in 1982 after his previously filed claims had all been finally denied or abandoned. The evidence submitted in support of previously denied claims and resubmitted with the 1982 claim included numerous x-rays, doctors' interpretations of those x-rays, pulmonary function studies, a blood gas study, a number of physician general examination reports, and a few depositions of examining physicians. With his 1982 claim, Combs placed in evidence only one new document, a written opinion from a Dr. Turbeville, which stated in its entirety:
 
 
 8
 Mr. Combs was a mine worker and was retired from the mines because of Black Lung disease. He takes Quibron, Brethine, Tagamet, and Lanozin 0.25 daily at present. I feel Mr. Combs is totally disabled as far as him being able to do any type of gainful employment that he is trained to do.
 
 
 9
 Dr. Turbeville's opinion does not reference any new objective data in support of his conclusion. When the 1982 claim was remanded by the Board, the ALJ accepted evidence from the employer to controvert the 1985 award of benefits. At that time, the ALJ considered a 1991 x-ray, a pulmonary function study, blood gas tests, and the reports of six doctors interpreting these results on behalf of the employer. One of the two doctors hired by the employer opined that certain tests previously performed were invalid for any accurate interpretation. In a more equivocal report, another doctor noted that he would defer to the radiologists' interpretation of Combs's chest film but opined that it showed, "[i]f anything, [ ] radiographic findings of simple coal worker's pneumoconiosis which is usually not associated with symptoms nor pulmonary function impairment." This doctor stated "with reasonable medical certainty that [he did] not think there [was] good evidence that [Combs] suffers from coal worker's pneumoconiosis" but noted that he could not make this statement "with complete medical certainty." None of the employer's evidence endorses a conclusion of total disability from coal mine pneumoconiosis.
 
 
 10
 In his July 25, 1985, decision and order awarding benefits pursuant to 20 C.F.R. § 718, the ALJ concluded that "the x-ray evidence submitted ... unequivocally establishes the existence of the disease." Relying on the fact that "14 physicians of record determined that a pulmonary condition has rendered Claimant totally disabled," the ALJ found that Combs was unable to do his usual coal mine work or other comparable work because of his respiratory or pulmonary impairment.
 
 
 11
 On appeal, the Board treated the ALJ's determination as finding that Combs established a material change in conditions on a duplicate claim, although the ALJ did not explicitly make a determination under 20 C.F.R. § 725.309, the duplicate claim provision of the regulations.
 
 
 12
 In his 1985 decision, the ALJ also determined that the employer, Southeast Coal Company, was relieved of liability under the transfer provisions of the 1981 amendments to the Act. The Board overruled the ALJ's determination that the transfer provisions of the 1981 amendments applied to Combs's Part C claims and, therefore, reversed the ALJ's finding that the employer should be dismissed as the responsible operator. Noting that the parties had not challenged the ALJ's finding that Combs was entitled to benefits, the Board remanded for a determination as to whether the employer, now reinstated as the responsible operator, had reserved the right to contest entitlement and develop the evidence further to controvert Combs's substantive claim.
 
 
 13
 On remand, the ALJ determined that the employer did not indefinitely reserve the right to develop evidence if reinstated as a responsible operator. Nevertheless, the ALJ treated the employer's offer of evidence as a motion to reopen and proceeded to consider the evidence introduced by the employer. The ALJ determined that the new evidence did not, "on balance, alter the outcome of the decision awarding benefits." The ALJ ruled that the weight of the evidence "unequivocally" demonstrated the existence of pneumoconiosis. The ALJ therefore reaffirmed its assessment of liability.
 
 
 14
 On appeal, the Board affirmed the ALJ's assessment of liability, concluding that substantial evidence supported the ALJ's findings. The Board found that the ALJ's finding of pneumoconiosis was supported by all the physicians' reports of record with one possible exception. The Board upheld its earlier determination that liability did not transfer to the Trust Fund on the grounds that the Board's prior decision constituted law of the case.
 
 II.
 
 15
 This court has a very narrow scope of review over the decisions of the Benefits Review Board. Harlan Bell Coal Co. v. Lemar, 904 F.2d 1042, 1045 (6th Cir.1990). We are limited to "scrutinizing Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." Welch v. Benefits Review Bd., 808 F.2d 443, 445 (6th Cir.1986), quoted in Harlan Bell, 904 F.2d at 1045. The ALJ hears evidence and makes findings of fact, which the Board must sustain if the findings are "supported by substantial evidence in the record considered as a whole and are in accordance with the law." Woodward v. Director, Office of Workers' Compensation Programs, 991 F.2d 314, 318 (6th Cir.1993). The Board is not, however, "empowered to engage in a de novo review of the facts." Harlan Bell, 904 F.2d at 1046. This court and the Board both "examine the ALJ's decision to determine whether it is consistent with the Act and supported by substantial evidence in the record considered as a whole." Id. (internal quotation marks and citations omitted). Substantial evidence, in turn, is defined as "more than a mere scintilla, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Woodward, 991 F.2d at 318 (internal quotation marks and citation omitted).
 
 III.
 A.
 
 16
 The petitioner and respondent argue that the ALJ's award was not supported by substantial evidence of a material change in conditions and cannot be upheld. We agree that it was error for the Board to have upheld the award where the ALJ failed to apply the proper legal standard and where the evidence could not support a conclusion of material change in conditions.
 
 The regulations provide:
 
 17
 If an earlier claim subject to review under part 727 of this subchapter has been denied after review, a new claim filed under this part shall also be denied, on the grounds of the prior denial, unless the deputy commissioner determines that there has been a material change in conditions or the later claim is a request for modification and the requirements of § 725.310 are met....
 
 
 18
 20 C.F.R. § 725.309(c). Section 725.310, governing modification of claims provides:
 
 
 19
 Upon his or her own initiative, or upon the request of any party on grounds of a change in conditions or because of a mistake in a determination of fact, the deputy commissioner may, at any time before one year from the date of the last payment of benefits, or at any time before one year after the denial of a claim, reconsider the terms of an award or denial of benefits.
 
 
 20
 20 C.F.R. § 725.310(a) (emphasis added). The last time Combs was denied benefits was in 1980. His refiling in 1982, therefore, occurred more than one year from denial of the claim; the claim cannot be treated as a modification pursuant to section 725.310. Because it cannot, Combs's 1982 claim could only succeed if he could demonstrate, pursuant to section 725.309, that there had been a material change in conditions since the 1980 denial.
 
 
 21
 Section 725.309 requires that a claim be denied if it is filed more than one year after an earlier-filed claim based on the same exposure has been finally denied, unless "there has been a material change in conditions" since the earlier denial. 20 C.F.R. § 725.309(d); Sharondale Corp. v. Ross, 42 F.3d 993, 996 (6th Cir.1994). To establish a "material change in conditions," the claimant must prove by a preponderance of the evidence at least one of the elements of entitlement that was previously decided against him. Sharondale, 42 F.3d at 997-98. The ALJ did not analyze the evidence to determine whether claimant Combs had established a material change in his condition since the 1980 denial of his claim. A material change in condition is a factual question for the ALJ to resolve and is critical to any recovery. Therefore, the Board could not properly hold this error harmless. Id. at 999.
 
 
 22
 The only new evidence of record submitted by the claimant was Dr. Turbeville's short September 29, 1982 opinion letter, but this opinion was unreasoned and unsubstantiated as a matter of law. The only new evidence submitted by the employer either suggested the absence of pneumoconiosis or was equivocal, and therefore could not satisfy the plaintiff's burden of proof. The evidence that is sufficiently probative to support an award was considered in earlier denied applications, and, as a matter of law, cannot support a finding of material change in condition that could, in turn, support an award of benefits. To the extent that the ALJ relied on the old evidence, that reliance violates the court's admonition in Sharondale that a material change cannot be based on an ALJ's disagreement with the previous characterization of the strength of the evidence. Id. The award must be reversed. The ALJ's finding of entitlement on the merits does not render harmless his error in failing to address the issue of a material change in conditions. The ALJ is not empowered to find the prior denial of benefits to be erroneous where the one-year period for modification has expired. Id.; Consolidation Coal Co. v. Worrell, 27 F.3d 227, 229-30 (6th Cir.1994).
 
 B.
 
 23
 The parties dispute whether liability for the award, if upheld, would properly rest with the Trust Fund as the ALJ held, or with the employer as the Board held.
 
 
 24
 Title 30, section 945 provides for the "[r]eview of claims pending on, or denied on or before, March 1, 1978." It dictates that part B claims pending or previously denied on March 1, 1978, will be reviewed and that the 1977 amendments will be applied to the claims. It further dictates that, upon completion of the Secretary's review, the claim will be considered by the Secretary of Labor. 30 U.S.C. § 945(a)(1), (a)(2), and (a)(3). Section 945(b) provides that the Secretary of Labor must review and apply the 1977 amendments to all claims (part C) before it that are pending or denied as of March 1, 1978. An individual whose claim is approved pursuant to this section is awarded benefits on a retroactive basis. 30 U.S.C. § 945(c). Thus, section 945 permits claimants whose claims were pending or denied on March 1, 1978, to obtain another review, and to have their claims evaluated under the more liberal eligibility standards of the 1977 amendments.
 
 
 25
 Section 932(j), which was part of the 1981 amendments, transferred liability for some claims to the Trust Fund, providing in relevant part:
 
 
 26
 Notwithstanding the provisions of this section [imposing liability on individual operators], section 9501 of Title 26 [imposing liability on the Trust Fund] shall govern the payment of benefits in cases--
 
 
 27
 ....
 
 
 28
 (3) in which there was a claim denied before March 1, 1978, and such claim is or has been approved in accordance with the provisions of section 945 of this title.
 
 
 29
 30 U.S.C. § 932(j). Regulations implementing the above statutory directive acknowledge that the 1981 amendments apply to "claims which were denied before March 1, 1978, and which have been or will be approved in accordance with section 435 of the Act [30 U.S.C. § 945]." 20 C.F.R. § 725.496(a). Thus, liability is transferred for claims that were denied under the old criteria but granted under the liberalized temporary standards. The regulations state that the Act defines three classes of denied claims potentially subject to the transfer provisions: (1) claims filed with and denied by the SSA before March 1, 1978; (2) claims filed with the DOL in which the claimant was notified of an administrative or informal denial before March 1, 1977, but took no action within a year of the notification to keep the claim alive; and (3) claims filed with the DOL and denied under the law in effect prior to the enactment of the 1977 amendments after a formal ALJ hearing, BRB review, or review in a federal court of appeals. The regulations further provide that where more than one claim was filed with the SSA or the DOL prior to March 1, 1978, "unless such claims were required to be merged by the agency's regulations, the procedural history of each such claim must be considered separately to determine whether the claim is subject to the transfer of liability provisions." 20 C.F.R. § 725.496(c). If a single claim was subjected to repeated denials, "the last such denial issued during the pendency of the claim determines whether the claim is subject to the transfer of liability provisions." 20 C.F.R. § 725.496(e). Finally, the regulations make explicit:
 
 
 30
 For a claim filed with and denied by the Social Security Administration prior to March 1, 1978, to come within the transfer provisions, such claim must have been or must be approved under the provisions of section 435 of the Act [30 U.S.C. § 945]. No claim filed with and denied by the Social Security Administration is subject to the transfer of liability provisions unless a request was made by or on behalf of the claimant for review of such denied claim under section 435.
 
 
 31
 20 C.F.R. § 725.496(d).
 
 
 32
 We find that the Board was correct in holding that liability for Combs's 1982 claim did not transfer. There is no need to resort to the legislative history; the statutory and regulatory language is clear. Combs's claim that could have transferred, if approved (the Part C claim originally filed in 1975), was not approved "in accordance with the provisions of section 945 of [title 30]," 30 U.S.C. § 932(c). Although the claim was reopened and reviewed under the 1977 amendment criteria, it was denied on September 29, 1980. More than a year elapsed before the claimant filed again in 1982.
 
 
 33
 Combs's 1982 claim cannot meet the requirement that, to transfer, the claim "must have been or must be approved under the provisions of section 435 of the Act." See 20 C.F.R. § 725.496(d) (emphasis added). Section 945 of title 30, (section 435 of the Act), provides for the application of liberalized criteria to claims that were originally denied. Title 30, section 945 and the 1977 amendments were not applied, and could not have been applied, to Combs's 1982 claim; consequently, his 1982 claim was not, and could not have been, approved under the provisions of section 945. Combs's 1982 claim fails to meet the transfer requirements, and, therefore, liability for any recovery remains with the individual operator and carrier.
 
 C.
 
 34
 The respondent Director argues that this court should reverse and remand--rather than vacate the award entirely--in light of the fact that the DOL failed to fulfill its statutory obligation to provide the claimant with an opportunity to substantiate his claim with a complete pulmonary evaluation at the DOL's expense. See 30 U.S.C. § 923(b); 20 C.F.R. §§ 718.101, 718.401, 725.406(b); Newman v. Director, OWCP, 745 F.2d 1162, 1166 (8th Cir.1985).
 
 
 35
 In the subpart dealing with the criteria for the development of medical evidence, the regulations provide:
 
 
 36
 The Office of Workers' Compensation Programs (hereinafter OWCP or the Office) shall develop the medical evidence necessary for a determination with respect to each claimant's entitlement to benefits. Each miner who files a claim for benefits under the Act shall be provided an opportunity to substantiate his or her claim by means of a complete pulmonary evaluation including, but not limited to, a chest roentgenogram (X-ray), physical examination, pulmonary function tests and a blood-gas study.
 
 
 37
 20 C.F.R. § 718.101. In the section assembling "miscellaneous provisions," with a subtitle of "right to obtain evidence," the regulations provide again:
 
 
 38
 Each miner who files a claim for benefits under the Act shall be provided an opportunity to substantiate his or her claim by means of a complete pulmonary evaluation. Accordingly, the Office shall assist each claimant in obtaining the evidence, including medical evidence, necessary for a complete adjudication of a claim. In the case of a miner's claim, initial medical tests and examinations shall be arranged for the miner by the Office, at no cost to the miner.
 
 
 39
 20 C.F.R. § 718.401.
 
 
 40
 A number of unpublished cases have remanded for production of additional medical evidence in light of the DOL's duty to provide a claimant with a complete pulmonary examination. See, e.g., Arnold v. Director, OWCP, No. 94-3554, 1995 WL 424432 (6th Cir.1995) (unpublished); Clark v. Karst-Robbins Coal Co., No. 93-4173, 1994 WL 709288 (6th Cir.1994) (unpublished per curiam ); Shackleford v. Director, OWCP, No. 89-3843, 1990 WL 120746 (6th Cir.1990) (unpublished per curiam ). "Generally, the DOL has not satisfied its duty if the record ultimately contains no credible medical evidence on a necessary element of a claimant's entitlement." Clark, 1994 WL 709288 at * 3 (citing Cline v. Director, OWCP, 917 F.2d 9, 11 (8th Cir.1990)).
 
 
 41
 Here, the claimant filed his claim in 1982 and was entitled to receive a complete pulmonary examination to substantiate his claim. The DOL failed to provide him with an exam and now his claim is alleged to suffer from a lack of substantiation of the necessary material change in conditions. On remand, the claimant should be provided with a complete pulmonary exam in accord with the regulatory mandate.
 
 IV.
 
 42
 For the foregoing reasons, the award is hereby REVERSED and REMANDED.
 
 
 
 *
 The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Part B claims are those filed after the inception of the Act and before July 1, 1973, while Part C claims are those filed after December 31, 1973. Chadwick [v. Island Creek Coal Co., 7 BLR 1-833 (1985) ]