RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0271p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

SHERMAN L. GREENE,

                    *Petitioner,*

    *v.*

KING JAMES COAL MINING, INC.; KENTUCKY
COAL PRODUCERS SELF-INSURANCE FUND;
DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES;
and DEPARTMENT OF LABOR,

                    *Respondents.*

No. 08-4094

On Petition for Review of an Order
of the Benefits Review Board.
No. 07-0898 BLA.

Argued: June 12, 2009

Decided and Filed: July 30, 2009

Before: SUTTON and GRIFFIN, Circuit Judges; LIOI, District Judge.*

_____

### COUNSEL

**ARGUED:** John L. Grigsby, APPALACHIAN RESEARCH & DEFENSE FUND OF
KENTUCKY, INC., Barbourville, Kentucky, for Petitioner. Rita Ann Roppolo,
UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., Ronald Eugene
Gilbertson, K & L GATES LLP, Washington, D.C., for Respondents. **ON BRIEF:**
John L. Grigsby, APPALACHIAN RESEARCH & DEFENSE FUND OF KENTUCKY,
INC., Barbourville, Kentucky, for Petitioner. Rita Ann Roppolo, Patricia M. Nece,
UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., Ronald Eugene
Gilbertson, K & L GATES LLP, Washington, D.C., for Respondents.

---

    *The Honorable Sara Lioi, United States District Judge for the Northern District of Ohio, sitting
by designation.

———————————

**OPINION**

———————————

LIOI, District Judge.  Sherman L. Greene petitions for review of an order of the Benefits Review Board ("Board") affirming the Administrative Law Judge's denial of his claim under the Black Lung Benefits Act (the "Act"), 30 U.S.C. § 901, *et seq.* Greene challenges the Board's determination that substantial evidence supported the ALJ's finding that Greene failed to establish the existence of pneumoconiosis.

I.

Greene was born in 1942.  He worked as a coal miner off and on between 1960 and 1963 and again between 1970 and 1985.  His last employer was the respondent, King James Coal Company, for whom he worked a total of one and a half to two years, ending in 1985.  The ALJ found that Greene had established a total of eleven years of coal mine employment.  The ALJ also found that Greene had a long history of cigarette smoking, attributing to him a total of forty-five (45) pack-years.  Green does not challenge either of these factual findings on appeal.

Greene filed his first claim for benefits on July 28, 1997.  That claim was denied after Greene failed to establish any of the medical elements of entitlement.  He filed the instant claim on July 29, 2002.  Four physicians submitted medical opinions in connection with his claim: (1) Dr. Tammy Brown; (2) Dr. Glen Baker; (3) Dr. Byron Westerfield; and (4) Dr. Bruce Broudy.

Dr. Brown was Greene's treating physician.  She diagnosed Greene with black lung disease based upon symptoms of shortness of breath, cough, wheezing, and recurrent bouts of acute bronchitis.  In her report, Dr. Brown stated that Greene's chest x-rays and pulmonary function tests were diagnostic of emphysema which, based upon his history, was related to silicosis.  Dr. Brown diagnosed Greene with chronic pulmonary disease related to what she believed was his eighteen (18) years of employment in the coal mines.  This diagnosis was based upon a chest x-ray that

revealed emphysematous lungs, as well as Greene's supposed 18-year history of exposure to coal dust.

Dr. Baker, the Department of Labor ("DOL") examining physician chosen by Greene, examined Greene on October 30, 2002. He noted that Greene had been smoking a half-pack of cigarettes per day for twenty-five (25) years (i.e., 12.5 pack-years), and accepted Greene's representation of sixteen (16) years of coal mine employment. Dr. Baker diagnosed Greene with coal workers' pneumoconiosis based upon an abnormal chest x-ray[1] and coal dust exposure. In addition, Dr. Baker diagnosed COPD, hypoxemia, chronic bronchitis, and chest pain. Dr. Baker attributed the pneumoconiosis solely to coal mine dust exposure, but explained that the COPD, hypoxemia, and chronic bronchitis were produced by a combination of coal mine dust exposure and cigarette smoking. Responding to the ALJ's request for clarification, Dr. Baker provided a supplemental report, dated August 17, 2004, in which he confirmed his prior findings on the bases stated in his initial report, as well as the presence of x-ray changes consistent with pneumoconiosis and a history of occupational exposure of at least ten (10) years which, according to Dr. Baker, was "usually felt to be presumptive evidence in the absence of other causes that the changes are due to coal mine employment and coal dust exposure." The supplemental report also noted the COPD, chronic bronchitis, and arterial hypoxemia diagnoses, which Dr. Baker felt could "be contributed to, to some extent, by [Greene's] coal dust exposure." Although the supplement was intended to clarify Dr. Baker's earlier report, it included the following equivocal and rather confusing passage:

> If he only had 9 years of coal dust exposure and smoked 25 years, the coal dust exposure would be minimal, and perhaps, not a significant contribution to his conditions. If he indeed had 16 years, then it would probably be significant and therefore be a cause of the miner's condition. He does have a mild impairment. It is related primary [sic] to the

---

[1]The relevant chest x-ray was taken on October 30, 2002. Dr. Baker interpreted it as showing pneumoconiosis. However, another doctor, Dr. Halbert, declared the same x-ray negative for pneumoconiosis. Dr. Halbert, as both a B-reader and a board-certified radiologist, had superior qualifications to Dr. Baker. Both the ALJ and the Board concluded that it was appropriate to discredit Dr. Baker's reading of the x-ray in favor of Dr. Halbert's.

obstructive airway disease and chronic bronchitis, as well as his resting arterial hypoxemia. These in turn can be related to pneumoconiosis as his coal dust exposure may have contributed to some extent in the causation of these problems.

Dr. Westerfield, a board-certified pulmonologist and B-reader,[2] examined Greene on November 5, 2002. He noted that Greene had a 30- to 50-pack-year smoking history, which he described as "truly dangerous." He took a chest x-ray and interpreted it as negative for pneumoconiosis. Dr. Westerfield noted moderate obstructive pulmonary impairment, which he found was inconsistent with pneumoconiosis. Instead, he attributed the impairment to cigarette smoking. In formulating his opinion, Dr. Westerfield assumed a 20-year underground coal mining history. He did, however, discount Greene's coal mine employment as a cause of the pulmonary impairment because that employment ended in 1985, and the respiratory symptoms had appeared only in recent years.[3] Dr. Westerfield ultimately concluded that Greene had "no medical condition that was caused, contributed to or aggravated by his coal-dust exposure."

Dr. Broudy -- like Dr. Westerfield, a board-certified pulmonologist and B-reader -- examined Greene's medical records and the reports of the other examining physicians. In his report, Dr. Broudy opined that, with only a single positive x-ray interpretation, the medical evidence did not support a diagnosis of pneumoconiosis. Dr. Broudy also found that Greene did not have any pulmonary disease that was caused, contributed to, or aggravated by coal dust exposure. Rather, he attributed Greene's pulmonary disease and dysfunction to chronic bronchitis and pulmonary emphysema caused by cigarette smoking. In addition, Greene had typical chronic obstructive airways disease, also due to smoking.

On August 7, 2003, the District Director issued a proposed decision denying benefits because (1) Greene failed to demonstrate a change in any of the applicable

---

[2]A "B-reader" has demonstrated proficiency in assessing and classifying x-rays for pneumoconiosis by successfully completing an examination conducted by or on behalf of the Department of Health and Human Services. 20 C.F.R. § 718.202(a)(1)(ii)(E).

[3]In a footnote, the ALJ made this comment: "Dr. Westerfield's opinion is arguably contrary to the revised regulations, which recognize that pneumoconiosis is a latent and progressive disease which may first become detectable after cessation of coal mine dust exposure. *See* 20 C.F.R. § 718.201(c)."

conditions of entitlement since the denial of his initial claim; and (2) the evidence did not show that Greene had pneumoconiosis. Greene requested a hearing, but the ALJ remanded because Dr. Baker's initial report failed to credibly address all the conditions of entitlement. After Dr. Baker provided the supplemental report discussed above (dated August 17, 2004), a hearing was held before the ALJ on February 2, 2006.

The ALJ issued a decision and order denying benefits, finding that while Greene had established a change in one of the conditions of entitlement (total disability), the evidence failed to establish the existence of pneumoconiosis. Specifically, the ALJ found that the x-ray evidence, which was conflicting, did not support a finding of coal worker's pneumoconiosis. Greene never appealed that finding, and we do not revisit it here. Discounting the opinions of Drs. Baker and Brown, the ALJ also determined that the medical opinion evidence was insufficient to establish either clinical or legal pneumoconiosis. As to clinical pneumoconiosis, the ALJ concluded that Drs. Baker and Brown failed to support or explain their diagnoses in light of the credible negative x-ray evidence. With regard to legal pneumoconiosis, the ALJ found Dr. Brown's opinion conclusory, and discounted it for failing to address the possible effect of Greene's heavy smoking history. Likewise, the ALJ found that Dr. Baker underestimated Greene's smoking history and overestimated the duration of his coal mine employment. The ALJ also refused to credit the opinions of Drs. Westerfield and Broudy, finding that they relied upon questionable generalizations regarding the comparative effects of cigarette smoking and coal dust exposure. Because Greene bore the burden of proof, the inadequate analysis in the negative opinions did nothing to advance his claim.

Greene appealed the ALJ's decision to the Board, arguing that the ALJ erred by failing to credit the medical opinions of Drs. Baker and Brown. Greene's appeal to the Board also attacked the ALJ's purported reliance upon the opinions of Drs. Westerfield and Broudy. King James Coal cross-appealed. A majority of the Board affirmed, concluding that the ALJ's opinion was supported by substantial evidence. The Board declined a remand, which the Director had requested, finding that Dr. Baker had provided Greene with a "complete pulmonary evaluation," thus fulfilling the DOL's

obligation. Two judges dissented from this portion of the ruling, maintaining that remand was the proper remedy due to defects in the reasoning underlying Dr. Baker's report.

Greene now appeals the Board's decision to this court, raising the following issues: (1) whether the ALJ's decision to reject the medical opinions of Drs. Baker and Brown was supported by substantial evidence; and (2) whether the ALJ's decision to credit the medical opinions of Drs. Westerfield and Broudy was erroneous because those opinions are hostile to the Act. In the alternative, Greene argues that if the ALJ properly rejected Dr. Baker's opinion as unreasoned, then the Board erred by refusing to remand the case so that Greene can receive a "complete pulmonary evaluation" within the meaning of 20 C.F.R. § 725.406(a).

## II.

The court reviews the Board's legal conclusions de novo. *Paducah Marine Ways v. Thompson*, 82 F.3d 130, 133 (6th Cir. 1996). While we must affirm the Board's decision "if the Board has not committed any legal error or exceeded its statutory scope of review of the ALJ's factual determinations," our review on appeal is "focused on whether the ALJ – not the Board – had substantial evidence upon which to base his . . . decision." *Jonida Trucking, Inc. v. Hunt*, 124 F.3d 739, 742 (6th Cir. 1997). The ALJ's findings are conclusive if they are supported by substantial evidence and accord with the applicable law. *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001). "'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[I]n referring to a singular 'reasonable mind,' the Supreme Court has directed us to uphold decisions that rest within the realm of rationality; a reviewing court has no license to 'set aside an inference merely because it finds the opposite conclusion more reasonable or because it questions the factual basis.'" *Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 756 (4th Cir. 1999) (quoting *Smith v. Director, OWCP*, 843 F.2d 1053, 1057 (7th Cir. 1988) and discussing *Richardson*, 402 U.S. at 401).

Where the substantial evidence requirement is satisfied, the court may not set aside the ALJ's findings, "even if [the court] would have taken a different view of the evidence were we the trier of facts." *Ramey v. Kentland Elkhorn Coal Corp.*, 755 F.2d 485, 486 (6th Cir. 1985). In deciding whether the substantial evidence standard is satisfied, we consider whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence over other testimony and documentary evidence. *Peabody Coal Co. v. Hill*, 123 F.3d 412, 415 (6th Cir. 1997). "A remand or reversal is only appropriate when the ALJ fails to consider all of the evidence under the proper legal standard or there is insufficient evidence to support the ALJ's finding." *McCain v. Director, OWCP*, 58 Fed. App'x 184, 201 (6th Cir. 2003) (citing *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 575 (6th Cir. 2000) and *Director, OWCP v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983)).

### III.

To establish entitlement to benefits, the claimant must prove by a preponderance of the evidence that (1) he has pneumoconiosis; (2) his pneumoconiosis arose at least in part out of his coal mine employment; (3) he is totally disabled; and (4) the total disability is due to pneumoconiosis (disability causation). *See* 20 C.F.R. §§ 718.202-204 (2000); *Adams v. Director, OWCP*, 886 F.2d 818, 820 (6th Cir. 1989). The regulations provide four methods of establishing the existence of pneumoconiosis: (1) by chest x-ray; (2) by autopsy or biopsy evidence; (3) by certain presumptions described in 20 C.F.R. §§ 718.304-718.306; or (4) by reasoned medical opinion. 20 C.F.R. § 718.202. Only the fourth method is at issue in this appeal.

Pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b). It includes both "clinical" pneumoconiosis and "legal" pneumoconiosis. 20 C.F.R. § 718.201(a). The regulations define clinical (or medical) pneumoconiosis as "those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to

that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1). Such conditions include, but are not limited to, "coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment." *Id.* Legal (or statutory) pneuomoconiosis is a broader term. *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 575 (6th Cir. 2000). It describes "any chronic lung disease or impairment and its sequelae arising out of coal mine employment[,]" including "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2).

A. Pneumoconiosis

Greene sought to establish pneumoconiosis by way of x-ray evidence and reasoned medical opinion.

The ALJ found that the x-ray evidence did not establish pneumoconiosis and Greene has not appealed that conclusion.

In assessing the medical evidence, the ALJ considered the opinions of Drs. Baker, Brown, Westerfield, and Broudy. Drs. Baker and Brown both concluded that Greene suffered from pneumoconiosis, while Drs. Westerfield and Broudy opined in the negative. Greene argues that, in concluding that he failed to meet his burden of establishing the existence of the disease, the ALJ discounted the opinions of Drs. Baker and Brown and accorded significant weight to the negative opinions of Drs. Westerfield and Broudy. On appeal, he attacks this treatment of the four medical opinions.

1. Dr. Baker's Opinion

Greene argues that the ALJ's decision to reject Dr. Baker's opinion was not supported by substantial evidence. We disagree.

"The determination as to whether [a physician's] report was sufficiently documented and reasoned is essentially a credibility matter. As such, it is for the factfinder to decide." *Director, OWCP v. Rowe*, 710 F.2d 251, 255 (6th Cir. 1983). To

make this determination, the ALJ must "examine the validity of the reasoning of a medical opinion in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based." *Id.* (footnote omitted).

In his opinion, Dr. Baker cited "abnormal chest x-ray & coal dust exposure" as the bases for his pneumoconiosis diagnosis. As explained previously, the ALJ properly concluded that the x-ray evidence did not support a finding of pneumoconiosis. Dr. Baker's reliance upon that evidence as support for his diagnosis was misplaced. The ALJ permissibly discounted Dr. Baker's reference to coal dust exposure because it was premised upon inaccurate accounts of Greene's coal mine employment and smoking history. Dr. Baker's opinion was based upon a 16-year history of underground coal mining work and a 12.5 pack-year smoking history. Those figures diverged significantly from the ALJ's factual findings, which credited Greene with 11 years of coal mine employment and 45 pack-years of smoking. The ALJ appropriately considered these miscalculations in weighing Dr. Baker's opinion. Finding serious flaws in the two stated bases for Dr. Baker's pneumoconiosis diagnosis, the ALJ properly viewed that opinion as lacking adequate support. When a physician's opinion lacks support and detail, the ALJ may disregard it. *See Wolf Creek Collieries v. Director, OWCP*, 298 F.3d 511, 517 (6th Cir. 2002) (citing *Risher v. OWCP*, 940 F.2d 327, 331 (8th Cir. 1991)).

Relying on *Cornett v. Benham Coal, Inc.*, 227 F.3d 569 (6th Cir. 2000), Greene also argues that the ALJ improperly criticized Dr. Baker's opinion for failing to explain the effect cigarette smoking, as distinguished from coal dust exposure, had on the diagnosis. The argument is without merit because *Cornett* and the instant case are distinguishable. In *Cornett*, the court held that "the ALJ committed legal error by using the contributing causality of smoking as a reason for discounting" the opinions of two doctors. 227 F.3d at 576. Dr. Baker acknowledged that both smoking and coal dust contributed to Greene's condition, but his discussion of the interplay of these factors was vague and equivocal. *See Griffith v. Director, OWCP*, 49 F.3d 184, 186 (6th Cir. 1995) (affirming ALJ's decision to discredit medical opinion as equivocal where physician named both smoking and coal dust exposure as possible causes). It was also based upon

erroneous information that significantly understated Greene's smoking history and overstated the length of his coal mine employment. Under the circumstances, the ALJ's criticisms of Dr. Baker's opinion were well within the ALJ's discretion, and the decision to discredit Dr. Baker's finding of pneumoconiosis was supported by substantial evidence.

### 2. Dr. Brown's Opinion

The ALJ similarly discounted the opinion of Dr. Brown, Greene's treating physician. Greene challenges the ALJ's analysis, arguing that the ALJ mischaracterized Dr. Brown's opinion by stating that Dr. Brown "failed to state a basis for these diagnoses apart from 'history.'" Greene maintains that Dr. Brown considered numerous factors beyond Greene's history and supported her opinion with adequate reasoning. Here again, Greene essentially challenges the ALJ's credibility determination.

Contrary to Greene's contention, the ALJ did not mischaracterize Dr. Brown's opinion. Dr. Brown's explanation of the pneumoconiosis finding cited an x-ray diagnostic of emphysema, rather than pneumoconiosis, and summarily stated that Greene's emphysema had "by history been related to pneumoconiosis." Dr. Brown tied Greene's emphysema to coal dust exposure, but in doing so relied upon an erroneous account of Greene's coal mine employment (18 years), which was inconsistent with the 11 years of coal mine employment found by the ALJ. Dr. Brown, who was not a pulmonary expert, offered no basis for attributing Greene's emphysema to coal dust rather than his lengthy and significant history of cigarette smoking. Under these circumstances, the ALJ acted within her discretion in discrediting Dr. Brown's pneumoconiosis finding.

Greene also contends that the ALJ erred in discounting Dr. Brown's opinion because, as his treating physician, Dr. Brown's opinion was entitled to greater weight. We disagree. The ALJ need not defer to a treating physician's opinion. *Peabody Coal Co. v. Groves*, 277 F.3d 829, 834 (6th Cir. 2002). A medical opinion is not entitled to any additional weight simply because it was rendered by the claimant's treating

physician. *Eastover Mining Co. v. Williams*, 338 F.3d 501, 511-13 (6th Cir. 2003). According to the regulations,

> . . . In appropriate cases, the relationship between the miner and his treating physician may constitute substantial evidence in support of the adjudication officer's decision to give that physician's opinion controlling weight, provided that the weight given to the opinion of a miner's treating physician shall also be based on the credibility of the physician's opinion in light of its reasoning and documentation, other relevant evidence and the record as a whole.

20 C.F.R. § 718.104(d)(5). Thus, "the weight to be accorded a treating physician's opinion is based on its power to persuade." *Mountain Clay, Inc. v. Spivey*, 172 Fed. App'x 641, 650 (6th Cir. 2006) (citing *Eastover*, 338 F.3d at 513; 20 C.F.R. § 718.104(d)).

Here, the ALJ adequately explained her reasons for finding Dr. Brown's opinion poorly reasoned and documented. The ALJ did not mischaracterize Dr. Brown's opinion and based her analysis on substantial evidence. Dr. Brown's status as Greene's treating physician did nothing to improve upon the analytical and documentary defects the ALJ found in the report. Accordingly, we find no error in the ALJ's treatment of Dr. Brown's opinion.

Because we conclude that the ALJ committed no error in giving little weight to all of Greene's affirmative evidence of pneumoconiosis, Greene could not have met his burden of proof, even in the absence of countervailing evidence. Accordingly, we must affirm the decision denying benefits.

### 3. Dr. Westerfield's and Dr. Broudy's Opinions

Greene also attacks the ALJ's purported reliance on the opinions of Drs. Westerfield and Broudy that he did not suffer from pneumoconiosis.

Greene argues that Dr. Westerfield attributed no significance to his 15-20 years of underground mining (which the ALJ found to be an overestimate) in the causation of his lung problems but, rather, attributed his respiratory disability to cigarette smoking

alone.**4**   He also asserts that, because Dr. Westerfield examined him only once, his opinion should be afforded less weight than Dr. Brown's.**5**   He challenges Dr. Westerfield's opinion because he was hired by King James Coal solely for the purpose of providing a negative report and he asserts that Dr. Baker's opinion should hold more weight because Dr. Baker was employed by the DOL.**6**   Finally, Greene maintains that Dr. Westerfield's opinion was hostile to the Act,**7** and therefore the ALJ erred in relying upon it.

Greene's challenges to Dr. Broudy's opinion -- that the opinion should be discounted because he did not examine Greene and that he was biased because he was hired and paid by King James Coal -- largely mirror his objections to Dr. Westerfield's opinion.  Like Dr. Westerfield, Dr. Broudy also expressed the view that obstructive, rather than restrictive, pulmonary impairment was not indicative of pneumoconiosis. Greene asserts that this viewpoint contravenes the regulatory definition of the disease, rendering Dr. Broudy's opinion hostile to the Act.

Greene actually somewhat misconstrues the ALJ's opinion with respect to Drs. Westerfield and Broudy.  Although the ALJ did, indeed, give their opinions more weight when it came to interpreting the x-ray evidence (because they had superior credentials as compared to the other two doctors)**8** and in determining that Greene had not

---

**4**As we already noted, however, Greene waived any challenge to the ALJ's factual finding regarding the length of his coal mine employment by failing to raise it before the Board.  In any event, Dr. Westerfield thoroughly explained why he believed Greene's "truly dangerous" smoking history, not coal dust exposure, was the source of Greene's respiratory ailments.

**5**This argument is neither true (Dr. Westerfield examined Greene twice) nor, in any event, a valid basis for discounting an otherwise meritorious medical opinion. *See Howard v. Martin County Coal Corp.*, 89 Fed. App'x 487, 493 (6th Cir. 2003) (citing *Eastover*, 338 F.3d at 509).  The number of patient examinations has no bearing on the analysis; it is the opinion's reasoning and supporting foundation that matter.

**6**The Supreme Court has held, however, that bias cannot be presumed merely because an expert is compensated for his opinion. *See Richardson*, 402 U.S. at 403.  Greene fails to identify any other facts suggestive of bias.

**7**Greene argues hostility to the Act in two respects: first, Dr. Westerfield mentioned at his deposition that Greene's lung problems did not arise until long after he had quit coal mining, in contravention of 20 C.F.R. § 718.201(c); and, second, Dr. Westerfield noted that pneumoconiosis is typically a restrictive, not obstructive, impairment, in contravention of 20 C.F.R. § 718.201(a)(2).

**8**The ALJ's treatment of the x-ray evidence has not been challenged on appeal.

established clinical pneumoconiosis (because their opinions on this issue were better documented), she did not credit their opinions regarding legal pneumoconiosis any more than those of Drs. Baker and Brown. In fact, after summarizing the opinions of the four doctors on this issue, the ALJ stated:

> Thus, Dr. Brown and Dr. Baker have relied upon little more than symptomatology, test results, and coal dust exposure over a certain period of time, without explaining how they reached their conclusions based upon the symptomatology and test results (and, in the case of Dr. Brown, how cigarette smoking factored into her opinion), while Dr. Westerfield and Dr. Broudy have reached their conclusions based upon questionable generalizations as to the comparative effects of cigarette smoking and coal mine dust, which generalizations are unsupported, even if not hostile to the Act. . . .
>
> . . . None of the opinions, in my view, adequately address the role that cigarette smoking and/or coal mine dust exposure played in this individual case. Dr. Brown did not address the possible effect of cigarette smoking; Dr. Baker assumed the two factors worked together, based upon an arbitrary cutoff of ten years of coal mine employment and an underestimated smoking history; and Drs. Westerfield and Broudy relied upon particular generalized assumptions without citing support for those assumptions. I do not find any of these opinions to be persuasive. However, inasmuch as it is the Claimant's burden of proof, he is not assisted by the inadequacy of the analysis in the medical opinions. Accordingly, I find that Claimant has failed to establish legal pneumoconiosis based upon the medical opinion evidence.

Decision and Order Denying Benefits, at 20-21. Clearly, the ALJ rejected all of the medical opinions as inadequate on the issue of legal pneumoconiosis and concluded that Greene, therefore, failed to meet his burden of proof on that issue.

Since the ALJ rejected all four doctors' opinions, Greene's assertion that the opinions of Drs. Westerfield and Broudy should not have been considered because they were hostile to the Act is a red herring.

The "'hostility-to-the-Act' rule 'allows an ALJ to disregard medical testimony when a physician's testimony is affected by his subjective personal opinions about pneumoconiosis which are contrary to the congressional determinations implicit in the Act's provisions.'" *Blakley v. Amax Coal Co.*, 54 F.3d 1313, 1321 (7th Cir. 1995)

(quoting *Pancake v. AMAX Coal Co.*, 858 F.2d 1250, 1256 (7th Cir. 1988)). Application of this rule requires determining "whether and to what extent those hostile opinions affected the medical diagnosis." *Wetherill v. Director, OWCP*, 812 F.2d 376, 382 (7th Cir. 1987)). Standing alone, however, a physician's expression of a view that conflicts with the Act is not sufficient to bar consideration of that opinion. *Wetherill*, 812 F.2d at 382.

The ALJ actually noted, in the section of the decision where she laid out all the medical evidence, that Dr. Westerfield had made statements that were arguably hostile to the Act. *See*, Decision at 9, notes 9 and 10. In particular, Dr. Westerfield had noted that Greene's respiratory symptoms arose after he stopped working as a coal miner and cited this fact as a reason for discounting pneumoconiosis, which is clearly contrary to the regulations recognizing that pneumoconiosis is "a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure." 20 C.F.R. § 718.201(c). Both Drs. Westerfield and Broudy indicated their belief that pneumoconiosis generally causes a *restrictive* lung pattern, whereas Greene exhibited chronic *obstructive* lung disease. This, too, is contrary to the regulations which define pneumoconiosis to include "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2).

It is apparent that the ALJ found no need to address this issue because she rejected the doctors' opinions on other grounds.

For the reasons discussed above, we conclude that there was substantial evidence to support the ALJ's decision to deny Greene's claim for benefits because he failed to establish that he had pneumoconiosis.

B. Complete Pulmonary Evaluation

Both Greene and the Director claim that if Dr. Baker's opinion was so poorly reasoned and documented as to justify the ALJ's refusal to rely upon it, then the case must be remanded so the DOL can provide him with a proper evaluation. The regulations entitle each claimant to a "complete pulmonary evaluation," which "includes

a report of physical examination, a pulmonary function study, a chest roentgenogram [x-ray] and, unless medically contraindicated, a blood gas study." 20 C.F.R. § 725.406(a).

King James Coal argued that Greene waived this argument by failing to raise it before the district director or the ALJ. The Board disagreed, concluding that the Director had standing as a party-in-interest to raise the issue and that the Director's failure to raise it earlier did not bar the Board from considering the issue for the first time on appeal. In a divided opinion, the *en banc* Board rejected the Director's remand argument, finding that the deficiencies in Dr. Baker's opinions were due to inaccurate information provided by Greene, not by any failing on the DOL's part. Writing in dissent, Administrative Appeals Judge McGranery (joined by Administrative Appeals Judge Hall) opined that remand should have been ordered because the ALJ discredited Dr. Baker's opinion at least in part for failing to explain how Greene's symptomatology and test results supported the doctor's conclusion that Greene's respiratory impairment was caused by his coal mine employment. In this appeal, the Director filed a brief advocating remand, arguing that the Board majority misconstrued the Director's position and that, in essence, the dissenters were correct.

Turning first to the waiver issue, in rejecting King James Coal's argument the Board relied upon *Hodges v. Bethenergy Mines, Inc.*, 18 BLR 1-84, 1-87-88 (1994).[9] The Board took the position that whether Dr. Baker's opinion fulfilled the DOL's regulatory obligations was a question the Director could raise for the first time on appeal. The Director preserved the argument for Greene's benefit, and Greene's failure to raise it before either the district director or the ALJ is immaterial. To the extent it was Greene's responsibility to preserve the argument, the Board exercised its discretion to excuse his failure.[10] King James Coal fails to convince us that the Board abused its

---

[9]See, *Hodges v. Bethenergy Mines, Inc.*, No. 93-1849 BLA, 1994 WL 573759, at *3 (DOL Ben.Rev.Bd. Sept. 29, 1994).

[10]Clearly, Greene did not present any objections to the adequacy of Dr. Baker's report to either the district director or the ALJ because *he* did not consider it inadequate; it was the *ALJ* who reached that conclusion. However, Greene did fail to raise the issue in his appeal to the Board.

discretion in doing so. Accordingly, we will consider the merits of the remand argument.

No one contends that Dr. Baker failed to administer any of the necessary tests. Greene even concedes that Dr. Baker's opinion was documented by a report of a physical examination, a pulmonary function study, a chest x-ray, and a blood gas study. The DOL fulfills its obligations under the Act and its implementing regulations by providing "a medical opinion that addresses all of the essential elements of entitlement." *Smith v. Martin County Coal Corp.*, 233 Fed. App'x 507, 512 (6th Cir. 2007) (unpublished) (citing *Gallaher v. Bellaire Corp.*, 71 Fed. App'x 528, 531 (6th Cir. 2003) (unpublished)). Dr. Baker performed all the required diagnostic tests and provided a report, as supplemented, addressing each of the elements a claimant must prove to obtain benefits under the Act. However, the ALJ found Dr. Baker's opinion unpersuasive because it did not explain "how [he] reached [his] conclusions based upon the symptomatology and test results[.]"

The situation here is indistinguishable from our opinions in *Keith v. Director, OWCP*, No. 92-3433, 1992 WL 349292 (6th Cir. Nov. 25, 1992) (unpublished), *Gallaher*, and *Smith*. Although these three cases are all unpublished and not binding on us, we find them persuasive.

In *Keith*, the same Dr. Baker who rendered his medical opinion in Greene's case, also rendered an opinion regarding claimant Keith, concluding that his impairment was "mild or minimal." On appeal, the Director argued for remand asserting that Dr. Baker's report did not provide the miner with "a complete pulmonary examination[.]" The court concluded that, although Dr. Baker "could have gone into greater detail in providing an explanation for his answer [with respect to how the mild or minimal severity of the impairment might prevent the claimant from performing mining work], . . . the lack of more detailed explanation does not render Dr. Baker's report inadequate in fulfilling the DOL's obligation to provide Keith with a full pulmonary examination and report." *Keith*, 1992 WL 349292, at * 3. The court concluded that there was substantial evidence to support the ALJ's determination that Keith was not totally disabled. In so doing, the

court distinguished on the facts the two cases which the director had cited in his brief. *Id.* (distinguishing *Newman v. Director, OWCP*, 745 F.2d 1162 (8th Cir. 1984) and *Johnson v. Director, OWCP*, 1989 WL 144348, No. 89-3211 (6th Cir. Nov. 20, 1989) (where medical opinions were discredited due to insufficient quality or lack of valid objective tests).[11] Dr. Baker rendered an almost identical opinion in his reports on Greene, finding his impairment to be "mild" and concluding that he did have the respiratory capacity to perform the work of a coal miner or comparable work in a dust-free environment. As in *Keith*, this report satisfies the DOL's duty to provide a "complete pulmonary evaluation."

In *Gallaher*, the claimant argued that if the ALJ did not assign controlling weight to the DOL-sponsored physician's diagnosis of pneumoconiosis, then he was entitled to a remand to obtain a complete, credible pulmonary evaluation. The ALJ rejected the physician's finding of pneumoconiosis "because it was an unexplained contradiction of his diagnosis from one year earlier, and appeared to be based only on an X-ray reading that was called into question." *Gallaher*, 71 Fed. App'x at 531. On appeal, the claimant sought remand, citing the defects in the medical opinion; but this court rejected the claimant's argument. While the doctor's report was unpersuasive and poorly reasoned, "[t]his is not the same as failing to address the essential elements of entitlement at all." *Id.* Here, as in *Gallaher*, the report provided by the DOL was poorly reasoned and ultimately failed to persuade the ALJ of the claimant's entitlement to benefits. However, because the report addressed all the essential elements of entitlement, it constituted a "complete pulmonary evaluation" as defined by the regulations, fulfilling the DOL's obligation.

Finally, in *Smith*, this court concluded that the claimant had received a "complete pulmonary evaluation." Smith was also examined by the same Dr. Baker who examined Greene. Dr. Baker concluded that Smith had an occupational lung disease caused by his coal mine employment as evidenced by "abnormal chest x-ray" and "coal dust

---

[11]In *Newman*, the ALJ also found that "the physicians were biased and less than thorough[.]" 745 F.2d at 1166.

exposure." Citing *Keith*, the *Smith* court concluded that all the necessary elements had been addressed by Dr. Baker and all the necessary tests performed and that it was not necessary for him to "provide exhaustive detail or explanation for his diagnosis regarding disability causation[.]" 233 Fed.Appx. at 513. It further concluded that failure to give controlling weight to the DOL-sponsored physician's opinion did not amount to a denial of a "complete pulmonary evaluation." *Id.*

As in *Keith*, *Gallaher*, and *Smith*, Dr. Baker conducted all the necessary tests on Greene and his report addressed all the elements of entitlement, even if lacking in persuasive detail.[12]

In the end, DOL's duty to supply a "complete pulmonary evaluation" does not amount to a duty to meet the claimant's burden of proof for him. In some cases, that evaluation will do the trick. In other cases, it will not. But the test of "complete[ness]" is not whether the evaluation presents a winning case. The DOL meets its statutory obligation to provide a "complete pulmonary evaluation" under 30 U.S.C. § 923(b) when it pays for an examining physician who (1) performs all of the medical tests required by

---

[12]The Director relies on "numerous unpublished decisions" to argue for a remand, including *Smith* and *Gallaher*, already discussed as not showing support for the Director's position, as well as *Southeast Coal Co. v. Combs*, No. 95-3054, 1996 WL 497157 at *6 (6th Cir. Aug. 30, 1996) and *Clark v. Karst-Robbins Coal Co.*, No. 93-4173, 1994 WL 709288 at *3 (6th Cir. Dec. 20, 1994) (per curiam).

In *Combs*, despite the fact that previous claims had been denied, the ALJ awarded benefits on a new claim (and the Board affirmed) even though there was no *new* medical evidence. A panel of this court reversed the award, criticizing the ALJ for relying on the old, already-rejected medical evidence and noting that "a material change cannot be based on an ALJ's disagreement with the previous characterization of the strength of the evidence." 1996 WL 497157 at *4 (citing *Sharondale Corp. v. Ross*, 42 F.3d 993, 999 (6th Cir. 1994)). Although the claimant had submitted "new evidence" in the form of a report from a Dr. Turbeville, the report did not reference any new objective data in support of the doctor's conclusion that the claimant was totally disabled by Black Lung Disease. The court concluded that the doctor's opinion was "unreasoned and unsubstantiated as a matter of law." *Id.* The case was remanded for a "complete pulmonary examination" because the award had been based solely on old evidence already rejected during the prior administrative proceedings. *Combs* is distinguishable on its facts from the instant case where, after the claimant filed his new claim on July 29, 2002, a complete pulmonary examination was conducted by Dr. Baker.

In *Clark*, benefits were awarded by the ALJ, but the award was reversed by the Board as unsupported by medical evidence. The claimant appealed and a panel of this court concluded that "substantial evidence supports the [Board's] determination that the ALJ properly discounted or discredited each of the medical reports submitted in this case on the causation issue." 1994 WL 709288 at *2. As a result, the record "contain[ed] no credible medical examination report[]" upon which to base an award. *Id.* at *3. Therefore, the *Clark* court remanded for a complete pulmonary examination. *Clark*, as an unpublished decision, is merely persuasive and not precedential. In any event, we distinguish it as standing only for the proposition that an *award* of benefits cannot be based on a complete lack of medical evidence. Obviously, a *denial* of benefits is completely in order where there is no supporting medical evidence.

20 C.F.R. §§ 718.101(a) and 725.406(a), and (2) specifically links each conclusion in his or her medical opinion to those medical tests.  Together, the completion of these tasks will result in a medical opinion under 20 C.F.R. § 718.202(a)(4) that is both documented, i.e., based on objective medical evidence, and reasoned.

Here, while the ALJ declined to credit Dr. Baker's opinion, that does not establish that the DOL failed to meet its statutory obligation.  All of the required tests were performed, and Dr. Baker, albeit briefly, linked his conclusions to those tests.  We have no doubt that Dr. Baker could have explained his reasoning more carefully.  And at some point a sufficiently slipshod analysis might warrant a remand for a "complete" evaluation.  This is not such a case, however.

Nor do we think that two Eighth Circuit decisions compel a different result.  In one of them, *Cline v. Director*, 917 F.2d 9 (8th Cir. 1990), the doctor failed to abide by a clear statutory requirement: obtaining a chest x-ray.  As the court explained, "Dr. Briney diagnosed Cline's condition without the benefit of a chest X-ray interpretation. Thus, the incomplete examination had the effect of making the diagnosis unreasoned. The X-ray which was taken on the day Dr. Briney examined Cline was interpreted positively by the Department's qualified reader.  However, Dr. Briney failed to base his diagnosis upon any X-ray interpretations, as required by 20 C.F.R. § 718.104 ["A report of any physical examination . . . shall include . . . [t]he results of a chest X-ray."]." 917 F.2d at 11.  In the other (earlier) case, *Newman v. Director*, 745 F.2d 1162 (8th Cir. 1984), the opinion contains the following language: "We cannot say that the Department of Labor fulfilled its responsibility for providing a complete pulmonary evaluation by arranging to obtain an informed medical opinion regarding [the claimant]'s condition, but then rejecting that opinion as not credible.  On remand, administrative personnel should either accept the import of the medical opinion of record, or obtain a more reliable medical opinion." Id. at 1166.  But the opinion contains no analysis of DOL's obligations, and the only thing it says about the medical opinion suggests that it should have been rejected --based, indeed, on any understanding of a "complete pulmonary examination." *See id.* ("The ALJ rejected the above medical opinions, concluding that

the physicians were biased and less than thorough, and that the reports were not of sufficient quality to warrant credence.").

We conclude that Greene received a "complete pulmonary evaluation" in compliance with DOL regulations and, therefore, no remand is required.

IV.

For the reasons set forth above, we AFFIRM the decision and order of the Benefits Review Board denying Greene's claim for black lung benefits.