RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0206p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

HUSCOAL, INC.; SECURITY INSURANCE COMPANY OF
HARTFORD,

          *Petitioners*,

    *v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR;
BENEFITS REVIEW BOARD; PEGGY CLEMONS, Widow
of and on behalf of James Clemons,

          *Respondents*.

> No. 21-3937

─────────────

On Petition for Review from the Benefits Review Board;
Nos. 20-0377 BLA; 20-0379 BLA.

Argued: July 27, 2022

Decided and Filed: September 7, 2022

Before: GILMAN, GRIFFIN, and THAPAR, Circuit Judges.

─────────────

## COUNSEL

**ARGUED:** James M. Poerio, POERIO & WALTER, INC., Pittsburgh, Pennsylvania, for
Petitioners. Mary Rachel Wolfe, WOLFE WILLIAMS & REYNOLDS, Norton, Virginia, for
Respondent Peggy Clemons. **ON BRIEF:** James M. Poerio, POERIO & WALTER, INC.,
Pittsburgh, Pennsylvania, for Petitioners. Brad A. Austin, WOLFE WILLIAMS &
REYNOLDS, Norton, Virginia, for Respondent Peggy Clemons.

      GILMAN, J., delivered the opinion of the court in which GRIFFIN and THAPAR, JJ.,
joined. THAPAR, J. (pp. 16–17), delivered a separate concurring opinion.

———————————

## OPINION

———————————

RONALD LEE GILMAN, Circuit Judge.  James Clemons died from chronic obstructive pulmonary disease (COPD) in 2015.  His widow, Peggy Clemons, filed a claim for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq*., contending that her deceased husband's respiratory illness was caused by his coal-mining employment at Huscoal, Inc.  The Administrative Law Judge (ALJ) granted Clemons's claim, and the Benefits Review Board (the Board) affirmed, concluding that the evidence was sufficient to establish the presence of legal pneumoconiosis.  Huscoal and its insurance carrier, Security Insurance Company of Hartford, petition this court for review of that decision, arguing that the ALJ improperly relied on a doctor's opinion that was based on inaccurate information.  For the reasons set forth below, we **DENY** the petition for review.

## I.  BACKGROUND

### A.  Statutory framework

The ALJ's decision is part of a unique and complex statutory compensation program. We therefore briefly describe that program before delving into the facts and procedural history of this case.

The Black Lung Benefits Act provides for the payment of benefits to coal miners who are totally disabled due to pneumoconiosis, a "chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. § 902(b).  There are two forms of pneumoconiosis: clinical pneumoconiosis and legal pneumoconiosis.

Clinical pneumoconiosis encompasses certain lung diseases "that the medical community recognizes to be caused by exposure to coal dust— . . . diseases 'characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment.'"

*Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 486 (6th Cir. 2014) (quoting 20 C.F.R. § 718.201(a)(1)). Legal pneumoconiosis is much broader, encompassing "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2); *see also Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 575 (6th Cir. 2000) ("This legal definition of pneumoconiosis . . . encompasses a wider range of afflictions than does the more restrictive medical definition of pneumoconiosis." (internal quotation marks omitted)).

For a claimant to establish entitlement to benefits, he or she must prove by a preponderance of the evidence that (1) the miner has pneumoconiosis (either clinical or legal), (2) the pneumoconiosis arose at least in part out of the miner's coal-mine employment, (3) the miner is totally disabled, and (4) the total disability is due to pneumoconiosis. *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 634 (6th Cir. 2009) (citing 20 C.F.R. §§ 718.202–04). Pneumoconiosis is deemed to "aris[e] out of coal mine employment" if it is "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201(b). And if a miner who is totally disabled because of pneumoconiosis dies, the surviving spouse may seek benefits on the miner's behalf. 30 U.S.C. § 922(a)(2); *Island Creek Coal Co. v. Hunt*, 730 F. App'x 367, 368 (6th Cir. 2018).

## B. Factual background

Many of the facts in this case are undisputed. The parties agree, and the ALJ found, that James Clemons worked as a coal miner for 10 years. Mr. Clemons also had a long history of cigarette smoking. The ALJ determined, and the parties do not contest, that Mr. Clemons smoked 2 packs per day for 30 years, meaning that he had a "60-pack year" smoking history. (A "pack-year" is calculated by multiplying the number of packs of cigarettes smoked per day by the total number of years an individual smoked.) Mr. Clemons was also totally disabled because he indisputably suffered from, and died as a result of, COPD. The sole disputed issue here is whether substantial evidence supports the ALJ's conclusion that Mr. Clemons's disabling condition constituted "legal pneumoconiosis" as defined by 20 C.F.R. § 718.201—i.e., whether Mr. Clemons's illness arose "at least in part" out of his coal-mine employment, or whether it was solely due to his 60 pack-year smoking history.

This is the second claim for federal black-lung benefits filed by Mr. Clemons. His initial claim was filed on his own behalf in 2010. That claim was denied after the district director of the Department of Labor's Office of Workers' Compensation Programs determined that Mr. Clemons was totally disabled, but that Mr. Clemons had failed to prove that he had pneumoconiosis. Mr. Clemons did not appeal that decision. He then filed a subsequent claim in March 2014. The district director denied that claim in March 2015, and Mr. Clemons appealed.

But before the claim could be heard by an ALJ, Mr. Clemons died in June 2015. The ALJ consequently remanded the claim to the district director to allow the parties to obtain medical evidence related to Mr. Clemons's death, to determine who would pursue the claim on behalf of his estate, and to allow Mrs. Clemons to file a survivor's claim for benefits. While Mr. Clemons's claim was pending before the district director, Mrs. Clemons filed the instant claim for survivor's benefits in October 2016. The district director issued a proposed decision and order awarding benefits in January 2018. Huscoal appealed, and both claims were referred to the Office of Administrative Law Judges.

### 1. *The ALJ awarded benefits to Mrs. Clemons*

The ALJ conducted a hearing in October 2019 and issued a decision and order awarding benefits in May 2020. Although the evidence did not support a finding of clinical pneumoconiosis, the ALJ concluded that it did support a finding of legal pneumoconiosis. The ALJ, in considering the question of legal pneumoconiosis, first examined treatment records from five doctors who provided care to Mr. Clemons from 2009 to 2015. He determined that, even though some of the doctors had diagnosed pneumoconiosis in the records, they had not adequately explained the bases for their diagnoses. As a result, the ALJ found that the "treatment records neither refute nor support the existence of" pneumoconiosis and were "therefore[] insufficient for [Mrs. Clemons] to meet her burden to prove that [Mr. Clemons] had pneumoconiosis."

The ALJ then proceeded to consider the medical opinions of Dr. Antoine Habre, Dr. Bruce Broudy, and Dr. Ayesha Sikder—the opinions that lie at the heart of this appeal. Dr. Sikder diagnosed Mr. Clemons with legal pneumoconiosis in the form of COPD that resulted

from both cigarette smoking and from coal-mine dust exposure. Both Dr. Habre and Dr. Broudy, by contrast, attributed Mr. Clemons's COPD solely to his cigarette smoking.

Before weighing the relative strength of the medical opinions, the ALJ addressed how much smoking history and coal-mine employment history each of the respective opinions attributed to Mr. Clemons. The ALJ found that each of the physicians had considered Mr. Clemons as having a 60 pack-year smoking history, so none of the opinions were discounted at all on that basis. This determination was made despite a handwritten notation in Dr. Sikder's report suggesting that she might have relied on an understated smoking history. Dr. Sikder wrote that Mr. Clemons smoked two packs per day from 1978 to February 2009, but wrote underneath: "2 ppd – 21 years." The ALJ nevertheless pointed to the specific calendar years written by Dr. Sikder and concluded that all of the physicians were in substantial agreement as to Mr. Clemons's smoking history.

Not so, however, as to Mr. Clemons's coal-mine employment history. The parties stipulated to a 10-year coal-mine employment history, and the ALJ noted that Dr. Habre's records were in substantial agreement at 10.54 years. But Dr. Sikder considered a history of 14 to 15 years, and Dr. Broudy a history of 17 years. The ALJ found that this discrepancy was significant enough to "lessen the weight" of the latter two opinions, "but not enough to deprive their opinions of all probative value."

Despite this discrepancy, the ALJ credited Dr. Sikder's opinion, over those of Dr. Habre and Dr. Broudy, that Mr. Clemons had legal pneumoconiosis. The ALJ determined that Dr. Sikder's opinion was well-documented, well-reasoned, and supported by substantial evidence in the record. Based on pulmonary-function testing, Dr. Sikder attributed Mr. Clemons's obstructive impairment to both his smoking history and his coal-mine employment history. In the ALJ's view, this was consistent with the Department of Labor's (DOL's) recognition in the Preamble to the 2001 revised regulations (the Preamble), 65 Fed. Reg. 79920, 79940 (Dec. 20, 2000), that the effects of smoking and coal-mine dust exposure are additive. The ALJ was thus "persuaded that Dr. Sikder adequately linked [Mr. Clemons's] COPD to his coal mine employment, irrespective of the length of coal mine employment she considered," so that opinion was accorded "probative weight."

On the other hand, the ALJ held that the respective opinions of Dr. Habre and Dr. Broudy were neither well-documented nor well-reasoned because they did not sufficiently explain why Mr. Clemons's coal-mine dust exposure did not contribute "at least in part" to his COPD. Dr. Habre opined that the Mr. Clemons's COPD "has [a] dual etiology" of both smoking and coal dust, but that Mr. Clemons did not have clinical or legal pneumoconiosis because "[c]oal mine dust did not play a substantial role" in his illness. Accordingly, in Dr. Habre's view, "[t]he main etiology of [Mr. Clemons's] respiratory disability remains the smoking habits."

Dr. Habre also opined that Mr. Clemons's pulmonary-function test showed "very severe obstructive airflow," which he stated was a common result of smoking tobacco. He further noted that "[t]obacco smoke will . . . lead to respiratory symptoms necessitat[ing] the use of [a] bronchodilator." The ALJ found that this opinion "failed to appreciate that some reversibility on pulmonary function test values after a miner uses bronchodilators does not preclude the presence of a chronic lung disease due to coal dust exposure." In addition, the ALJ took issue with the fact that Dr. Habre's opinion, when considering whether Mr. Clemons had legal pneumoconiosis, noted that Mr. Clemons's "chest x-ray did fail to show any evidence of coal worker pneumoconiosis." This was, in the ALJ's view, contrary to the DOL's position in the Preamble. Moreover, because legal pneumoconiosis is broader than clinical pneumoconiosis, the ALJ concluded that "Dr. Habre's reliance on the fact that the Miner did not have clinical pneumoconiosis to exclude some contribution from coal mine dust on his obstructive impairment is misplaced."

Dr. Broudy likewise attributed Mr. Clemons's COPD solely to cigarette smoking. He found that Mr. Clemons exhibited "some responsiveness to bronchodilation," which "occurs with COPD from smoking, but rarely with impairment due to coal dust exposure." In other words, the responsiveness to bronchodilation convinced Dr. Broudy that Mr. Clemons's COPD was an obstructive impairment that is typical of cigarette smoking rather than a restrictive impairment typical of exposure to coal-mine dust.

The ALJ faulted Dr. Broudy, like he did Dr. Habre, for excluding coal-mine dust exposure as a contributing cause of Mr. Clemons's COPD based on the responsiveness to bronchodilation. Again pointing to the Preamble, the ALJ concluded that Dr. Broudy's opinion

was "contrary to the [DOL]'s view that smoking and coal mine dust are equally harmful to the lungs and cause significant obstruction at roughly the same rate." Dr. Broudy's reasoning that Mr. Clemons's COPD was obstructive in nature, rather than restrictive, was thus rejected by the ALJ.

Because the ALJ credited Dr. Sikder's opinion over those of Dr. Habre and Dr. Broudy, the ALJ held that the preponderance of the evidence showed that Mr. Clemons's had legal pneumoconiosis. The ALJ then held that Dr. Sikder's opinion that Mr. Clemons's disabling COPD was caused at least in part by coal-mine dust exposure also established that pneumoconiosis was a substantially contributing cause of his total disability. Because the other elements of Ms. Clemons's claim were undisputed, the ALJ awarded benefits. Huscoal then appealed to the Board.

## 2. *The Board affirmed the ALJ's award of benefits*

In September 2021, the Board affirmed the award of benefits in a 2-1 decision. The Board held that the ALJ acted within his discretion in crediting Dr. Sikder's opinion even though that opinion relied on an overstated coal-mine employment history because the ALJ took that discrepancy into account. Similarly, the Board rejected Huscoal's argument that Dr. Sikder's opinion relied on an inaccurate smoking history and thus should not have been credited. The context of Dr. Sikder's opinion persuaded the Board that substantial evidence supported the ALJ's conclusion that the doctor relied on an accurate smoking history despite the inconsistent handwritten notation indicating a lower smoking history than the 60 pack-years found by the ALJ. Finally, the Board held that the ALJ "permissibly found Drs. Habre and Broudy did not persuasively explain why the Miner's partial bronchodilator response on pulmonary function testing means that coal mine dust exposure did not contribute to his disabling COPD."

The dissenting Board member disagreed that Dr. Sikder's opinion should have been credited regarding legal pneumoconiosis because of that opinion's reliance on an overstated employment history and the handwritten notation suggesting a possible reliance on an understated smoking history. That member would have remanded this case for the ALJ "to provide an adequate explanation as to why Dr. Sikder's opinion is reliable" despite the

inaccurate employment history as well as to explain why the handwritten notation did not alter the ALJ's finding that all three doctors considered Mr. Clemons's smoking history to be around 60 pack-years.

This timely petition for review of the Board's decision followed.

## II.  ANALYSIS

### A.  Standard of review

"In black-lung-benefits cases, we review the Board's legal conclusions de novo and review the ALJ's decision (rather than the Board's) to determine whether the decision was supported by substantial evidence." *Cent. Ohio Coal Co. v. Dir., Office of Workers' Comp. Programs*, 762 F.3d 483, 488 (6th Cir. 2014).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (citation and internal quotation marks omitted).  In determining whether the substantial-evidence standard is met, we must consider "whether the ALJ adequately explained the reasons for crediting certain testimony and documentary evidence" over other evidence in the record.  *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 634 (6th Cir. 2009).

The scope of our review extends no further.  When the substantial-evidence standard is met, the ALJ's findings may not be disturbed, "even if the court would have taken a different view of the evidence were we the trier of facts." *Id*. (citation and alteration omitted).  This court thus may "not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Jericol Mining, Inc. v. Napier*, 301 F.3d 703, 708 (6th Cir. 2002) (citation omitted).  Accordingly, "[w]hen the question is whether the ALJ reached the correct result after weighing conflicting medical evidence," as it is here, "our scope of review is exceedingly narrow." *Consolidation Coal Co. v. Worrell*, 27 F.3d 227, 230 (6th Cir. 1994) (alterations, citation, and internal quotation marks omitted).

### B.  Substantial evidence supports the ALJ's conclusion

The essence of Huscoal's argument is that, in considering whether Mr. Clemons had legal pneumoconiosis, the ALJ improperly relied on the opinion of Dr. Sikder and improperly

discounted the opinions of Dr. Habre and Dr. Broudy.  According to Huscoal, the ALJ also gave insufficient weight to the treatment records of the physicians who provided care to Mr. Clemons over the years.  Because we are prohibited from reweighing the evidence ourselves, our task is limited to deciding whether substantial evidence supported the ALJ's decision as to each of these opinions.  We begin by briefly addressing the ALJ's weighing of the treatment records before assessing whether the ALJ properly relied on Dr. Sikder's opinion over those of Dr. Habre and Dr. Broudy.

### 1.  *The treatment records*

Huscoal initially argues that the ALJ erred by discounting the records of Dr. John Dineen and Dr. Edwin Santos.  This argument is unavailing for multiple reasons.  First, the ALJ did not entirely discount any of the treatment records; the ALJ simply refused to afford them probative weight because they did not "refute nor support the existence of clinical or legal pneumoconiosis."  And this was entirely appropriate given the substance of the treatment records in question.

Dr. Dineen attributed Mr. Clemons's COPD to smoking, but he did not account for Mr. Clemons's history of coal-mine employment.  This omission does not matter, Huscoal insists, because "Dr. Dineen was clearly aware of [Mr. Clemons's] employment history."  But whatever Dr. Dineen might have been aware of, his opinion still fails to explain why Mr. Clemons's coal-mine employment did not contribute to his COPD.  Without any explicit consideration of Mr. Clemons's employment history, Dr. Dineen's opinion was reasonably given little weight by the ALJ.  *See Island Creek Coal Co. v. Hill*, 739 F. App'x 825, 832 (6th Cir. 2018) ("[I]f a medical opinion . . . solely attributes the disease to smoking tobacco *without adequately explaining why* coal dust is not a cause, where a history of coal dust exposure is present, . . . an ALJ is entitled to give such an opinion less weight." (emphasis in original)).

Dr. Santos's records were similarly given little weight by the ALJ because the doctor did not offer an opinion as to the etiology of Mr. Clemons's COPD.  All Huscoal offers is that Dr. Santos "clearly attributed the COPD to a sixty pack year smoking history."  Tellingly, though, Huscoal offers no record citation to support that assertion, and there is not a single mention of

tobacco smoking in the 50 pages of records from Dr. Santos. This opinion was thus properly given little weight by the ALJ.

Huscoal conversely argues that the ALJ erred in his consideration of the opinion of Mr. Clemons's final treating physician, Dr. Rafiqul Alam, who treated Mr. Clemons shortly before his death. Dr. Alam reported that Mr. Clemons had legal pneumoconiosis, but the ALJ gave this opinion little weight because Dr. Alam did not state the length of the smoking history or the coal-mine employment history that he considered in making his diagnosis. The ALJ observed, however, that Dr. Alam's opinion is "consistent with the [DOL]'s view that the effects of cigarette smoking and respirable coal mine dust are equally harmful to the lungs and cause significant obstruction at roughly the same incidence." Huscoal argues that this observation was in error given the ALJ's conclusion that Dr. Alam's opinion was not well-documented. But the ALJ's observation did no harm because the ALJ afforded little weight to Dr. Alam's opinion and held that none of the treatment records supported a finding of clinical or legal pneumoconiosis. Huscoal has thus identified no error in the ALJ's weighing of the treatment records.

### 2. Dr. Sikder's opinion

We now move to the crux of this appeal: the ALJ's reliance on Dr. Sikder's opinion over those of Dr. Habre and Dr. Broudy. As it did below, Huscoal argues that Dr. Sikder's opinion is neither well-reasoned nor well-documented because the opinion is allegedly based on an understated smoking history and overstated employment history. We address each of these purported inaccuracies in turn.

Dr. Sikder's opinion was not undermined by the handwritten notation of a lower pack-year history because the ALJ reasonably concluded that the actual smoking history relied on by Dr. Sikder was the specific date range of Mr. Clemons's smoking that was noted in the opinion. Just above the handwritten notation at issue is the statement that Mr. Clemons smoked two packs of cigarettes per day from 1978 to February 2009, which was consistent with the ALJ's finding of a 60 pack-year smoking history. As the Board pointed out, the fact that the handwritten notation does not follow from this specific date range can be explained as a clerical error—the result of accidentally writing 21 years instead of 31 years. But all that matters for the purposes

of this appeal is that a reasonable mind could accept that Dr. Sikder relied on the date range consistent with the ALJ's finding. *See Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985) (per curiam) ("'Substantial evidence' means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971))). For that reason, substantial evidence supports the ALJ's finding that Dr. Sikder relied on an accurate smoking history.

On the other hand, there is no question that Dr. Sikder relied on an overstated coal-mine employment history of 14 to 15 years compared to the 10 years found by the ALJ per the parties' stipulation. This discrepancy was directly addressed by the ALJ, who found that it was significant enough to "lessen the weight" of Dr. Sikder's opinion, "but not enough to deprive the[] opinion[] of all probative value."

The key question is whether this discrepancy *required* the ALJ to completely discount Dr. Sikder's opinion. This presents an unusual circumstance because, in virtually all cases in which a doctor relied on an overstated coal-mine employment history, the question has been whether the ALJ erred in discounting the opinion (rather than relying on it). In such cases, this court has repeatedly held that "it is within the discretion of the ALJ to discount the opinion of a physician who incorrectly assesses the length of coal mine employment." *Ray v. Brushy Creek Trucking Co., Inc.*, 50 F. App'x 659, 664 (6th Cir. 2002) (citation omitted); *see also Creech v. Benefits Review Bd.*, 841 F.2d 706, 708 (6th Cir. 1988) ("Dr. Clarke's evaluation of the petitioner was based on an inaccurate work history, and the ALJ was entitled to conclude that the opinion was not 'reasoned' as required by the regulation.").

But this court has never held that an ALJ is required to fully discount such an opinion. And in an analogous circumstance involving an opinion with a materially understated smoking history, this court upheld the ALJ's reliance on the doctor's opinion. *Wolf Creek Collieries v. Dir., Office of Workers' Comp. Programs*, 298 F.3d 511, 514, 522–23 (6th Cir. 2002). The ALJ in *Wolf Creek* concluded that the coal miner's widow had established that the miner died from pneumoconiosis based on the opinion of a Dr. Hieronymus. That opinion attributed a smoking history of only 5 years to the miner, but the evidence established a smoking history of about 50 years. *Id.* at 516.

The ALJ in *Wolf Creek* found this discrepancy "troubling," but "not sufficient to discredit" Dr. Hieronymus's opinion because he had actually treated the patient, unlike the other doctors who provided opinions in the case. *Id*. at 516–17. As a result, the ALJ found that Dr. Hieronymus's opinion was "the most credible evidence in the record regarding the cause of [the miner]'s death." *Id*. at 522. In its review of the ALJ's decision, the Board rejected the employer's argument that Dr. Hieronymus's reliance on a vastly understated smoking history required that his opinion be discredited. It instead held that, even though Dr. Hieronymus "recorded an inaccurate smoking history," the ALJ "nonetheless provided an adequate rationale for according the opinion greater weight." *Id*. at 517.

This court affirmed, holding that there was substantial evidence to support the ALJ's decision. *Id*. at 522–23. The court "recognize[d] that the evidence of record may permit an alternative conclusion, but [] defer[red] to the ALJ's authority in the finding of facts." *Id*. at 523. *Wolf Creek* teaches that the ALJ is not required to totally discount a doctor's opinion just because it relied on imprecise information so long as the ALJ acknowledges the discrepancy and adequately explains why the opinion is nevertheless entitled to greater weight than others in the record.

Similarly, this court has explained that, even where one aspect of a doctor's opinion is inaccurate or misguided, the opinion does not need to be fully discounted if there are other bases for the opinion. For example, in *Jericol Mining, Inc. v. Napier*, 301 F.3d 703 (6th Cir. 2002), the court rejected the company's argument that the ALJ wrongfully credited certain medical opinions after the ALJ concluded that the opinions' reliance on x-rays was misguided. *Id*. at 713. The company's argument "overlook[ed] the fact that these physicians' diagnoses were not based solely on the x-ray evidence[,]" so "[t]he ALJ's decision to disagree with their analyses of the x-rays, therefore, does not result in a complete refutation of these doctors' opinions." *Id*.

In contrast, this court in *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628 (6th Cir. 2009), considered a doctor's opinion that was based on inaccurate employment and smoking histories as well as on x-rays that did not support a finding of pneumoconiosis. The court held that, "[f]inding serious flaws in the two stated bases for [that doctor's] pneumoconiosis diagnosis, the ALJ properly viewed that opinion as lacking adequate support." *Id*. at 635; *see*

*also W.V. CWP Fund ex rel. Pen Coal Corp. v. Mullins*, 623 F. App'x 59, 61 (4th Cir. 2015) ("In sum, Dr. Gaziano's opinion, which relied exclusively on an inflated coal mining history, is simply insufficient to satisfy Mullins' burden of demonstrating his entitlement to benefits.").

Applying the lessons of this court's caselaw to the present case, the ALJ could properly credit Dr. Sikder's opinion. The ALJ acknowledged that Dr. Sikder relied on an inaccurate coal-mine employment history, but as in *Wolf Creek*, correctly deduced that the opinion need not be completely discounted on that basis. And as in *Jericol Mining*, the inaccurate information in Dr. Sikder's opinion did not form the sole basis of that opinion. Her opinion was also based on her finding an obstructive impairment during pulmonary-function testing, so the ALJ was persuaded that Dr. Sikder "adequately linked the Miner's COPD to his coal mine employment irrespective of the length of coal mine employment she considered." We therefore agree with the Board's conclusion that "the ALJ took the coal mine employment discrepancy into account when he weighed Dr. Sikder's opinion, and acted within his discretion in explaining that the discrepancy was not so great as to detract from [the] opinion's probative value."

### 3. The opinions of Dr. Habre and Dr. Broudy

Another reason that the ALJ afforded dispositive weight to Dr. Sikder's opinion was because of the flaws noted in the opinions of Dr. Habre and Dr. Broudy. As for Dr. Habre, the ALJ correctly found that the doctor's opinion was too equivocal to show that Mr. Clemons's COPD was not caused "at least in part" by past exposure to coal-mine dust. ALJs may reject opinions that are "equivocal" as to the cause of a miner's illness. *Griffith v. Dir., Office of Worker's Comp. Programs, U.S. Dep't of Labor*, 49 F.3d 184, 186 (6th Cir. 1995) (affirming the ALJ's decision to discredit a medical opinion as equivocal where the physician named both smoking and coal-dust exposure as possible causes).

The ALJ here properly compared this case to *Arch on the Green, Inc. v. Groves*, 761 F.3d 594 (6th Cir. 2014). There, a medical opinion was relied on by the ALJ to establish pneumoconiosis where it "explained that [the miner's] COPD was caused by both his smoking and his exposure to coal dust," even though it also "said that smoking was the more important cause." *Id*. at 599. Similarly, Dr. Habre essentially admitted that coal dust played some role in

Mr. Clemons's COPD by opining that the COPD had a "dual etiology," even though the "main etiology" was smoking.

Both Dr. Habre and Dr. Broudy were also correctly faulted by the ALJ for relying on negative chest x-rays to support their conclusion of a lack of legal pneumoconiosis. Negative x-rays are relevant only to clinical pneumoconiosis, which is narrower than legal pneumoconiosis, so we have declined to disturb the discounting of medical opinions that use x-rays to refute the diagnosis of legal pneumoconiosis. *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1074 (6th Cir. 2013). As this court explained in *Big Branch*:

> The ALJ reviewed the evidence, determined that the[] two physicians relied heavily on negative x-ray findings, which are used to determine whether clinical pneumoconiosis is found, to conclude a lack of legal pneumoconiosis, and devalued the opinions to the extent they did so. We conclude that such a decision is well-reasoned and based on substantial evidence.

*Id*. (citation omitted).

The ALJ also permissibly rejected both Dr. Habre's and Dr. Broudy's reliance on Mr. Clemons's response to bronchodilation to explain a lack of legal pneumoconiosis. *See Crockett Colleries, Inc. v. Barrett*, 478 F.3d 350, 356 (6th Cir. 2007) (affirming the ALJ's rejection of a doctor's opinion that "had not adequately explained why [the miner]'s responsiveness to treatment with bronchodilators necessarily eliminated a finding of legal pneumoconiosis"). And finally, the ALJ properly rejected the opinions' explanation that legal pneumoconiosis was only restrictive in nature and not obstructive. "This [] is contrary to the regulations[,] which define pneumoconiosis to include 'any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment.'" *Greene v. King James Coal Mining, Inc.*, 575 F.3d 628, 638–39 (6th Cir. 2009) (quoting 20 C.F.R. § 718.201(a)(2)); *see also Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 487 (6th Cir. 2012) ("Legal pneumoconiosis may result from an obstructive impairment, regardless of any restrictive component. Physicians' opinions may be discredited if they find no pneumoconiosis due to an obstructive versus restrictive impairment.").

At the end of the day, the ALJ was left to reconcile three conflicting medical opinions, each of which had flaws. The ALJ, faced with this situation, permissibly concluded that Dr.

Sikder's opinion, despite its inaccurate coal-mine employment history, was "the most credible evidence in the record" as to whether Mr. Clemons had legal pneumoconiosis because Dr. Habre's and Dr. Broudy's opinions contained more substantial flaws. *See Wolf Creek Collieries v. Dir., Office of Workers' Comp. Programs*, 298 F.3d 511, 522–23 (6th Cir. 2002).

Asking us to decide now that the flaws in the latter two opinions were less substantial than those in Dr. Sikder's would require us to "reweigh the evidence or substitute our judgment for that of the ALJ," *Big Branch Res.*, 737 F.3d at 1069, which we may not do. We instead look only to the evidence underlying the ALJ's decision, which includes extensive research and caselaw discussing the pulmonary risks associated with both cigarette smoking and coal-mine dust exposure. In light of that evidence, we conclude that substantial evidence supports the ALJ's decision to credit Dr. Sikder's opinion that Mr. Clemons's COPD was caused at least in part by coal-dust exposure.

### III. CONCLUSION

For all of the reasons set forth above, we **DENY** the petition for review.

---

**CONCURRENCE**

---

THAPAR, Circuit Judge, concurring.  I join the majority opinion in full.  I write separately only to note that overreliance on agency guidance is problematic.  The ALJ here entirely discounted the testimony of two experts based on one line from a guidance document—the DOL's Preamble to the Black Lung Benefits Act regulations.  Huscoal didn't challenge that reasoning.  But it is concerning for two reasons.

First, the Preamble didn't go through notice and comment.  The Administrative Procedure Act requires that before an agency issues a binding rule, it must (at the very least) publish a notice of the proposed rule, allow public comments, and respond.  5 U.S.C. § 553. Those procedures aren't mere formalities.  Rather, they guard against underinformed agency action and protect regulated parties from unanticipated changes to their rights and duties.  *See Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1142–43 (6th Cir. 2022).  Treating the Preamble—which hasn't gone through notice and comment—as binding would rob the public of the input and warning the law demands.

Second, a binding Preamble would undermine the black-lung regulations.  Consider the Preamble's language that the ALJ relied on here:  "The risk [coal dust poses] is additive with cigarette smoking."  Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, 65 Fed. Reg. 79920, 79940 (Dec. 20, 2000); *see* JA 101–02.  Read as guidance, that language helps explain why the regulations don't disqualify miners with smoking histories from receiving benefits.  *See* 20 C.F.R. § 718.201.  Read as binding, though, that same language contradicts the regulations.  The regulations require the *miner* to prove that coal dust contributed to his disease.  *Id.* § 718.202.  But a binding Preamble would require the *employer* to prove that coal dust *didn't* contribute to the disease.  So when an ALJ turns the Preamble's explanation into a binding presumption, he switches the burden of proof the regulations prescribe.  And since the regulations—unlike the Preamble—have gone through notice and comment, contradicting their mandate is unlawful.

If Huscoal had argued on appeal that the ALJ's order read the Preamble as binding, we would need to more closely scrutinize the ALJ's reasoning.  As it is, the only issue Huscoal raised was a substantial-evidence challenge.  And as the majority correctly holds, the ALJ's decision passes evidentiary muster.  So I concur.