NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0077n.06

No. 23-3319

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ISLAND CREEK COAL COMPANY, | ) | |
| Petitioner, | ) ) | **FILED**<br>Feb 22, 2024<br>KELLY L. STEPHENS, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| DIRECTOR, OFFICE OF WORKERS' | ) | AN ORDER OF THE BENEFITS |
| COMPENSATION PROGRAMS, U.S. | ) | REVIEW BOARD, UNITED STATES |
| DEPARTMENT OF LABOR; BENEFITS | ) | DEPARTMENT OF LABOR |
| REVIEW BOARD; DONALD | ) | |
| BENTLEY, | ) | |
| | ) | OPINION |
| Respondents. | ) | |
| | ) | |

Before: BATCHELDER, STRANCH, and DAVIS, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** Donald Bentley, a retired coal miner, brought this case under the Black Lung Benefits Act. Following a hearing, the Administrative Law Judge (ALJ) awarded him benefits for legal pneumoconiosis. Bentley's former employer, Island Creek Coal, appealed that decision to the Department of Labor's Benefits Review Board (Board), which affirmed the ALJ. Island Creek Coal petitions for review of the award of benefits arguing that Bentley failed to meet his burden to prove that his chronic lung impairment was due to his work in the mines rather than to smoking. For the reasons stated below, we **DENY** the petition for review.

## I.   BACKGROUND[1]

Donald Bentley was a miner and long-time smoker.[2]  His mining career spanned seven different employers and twelve years including work in various positions, all of which exposed him to heavy coal and rock dust.  Bentley was unable to specify exactly how long he had worked underground because "he was in and out of the mine." Based on Social Security statements, the ALJ found that Bentley "worked as a coal miner for 7.56 years," and that his work included employment with Island Creek Coal Company.

Bentley ceased mining work in 1988, and on October 23, 2018, applied for black lung benefits.  Island Creek challenged his application.  At the resulting hearing, the ALJ reviewed five physician reports, one supplemental physician report, and two physician depositions in addition to Bentley's application.  The ALJ entered a Decision and Order holding that Bentley was entitled to benefits based on legal pneumoconiosis.  The Board affirmed.

At the hearing, the ALJ considered medical evidence from Dr. Raj "on behalf of the Department[,]" from Drs. Dahhan and Fino "on behalf of the Employer[,]" and from Drs. Green and Nadar "on the Claimant's behalf[.]" Drs. Dahhan and Fino both opined that Bentley did not suffer from clinical or legal pneumoconiosis. The ALJ explained that he gave "full probative weight" to the opinions of Drs. Raj, Green, and Nadar, all of whom opined that Bentley's condition was likely caused by a combination of smoking and working in the coal mines.  As the Board summarized, Dr. Raj—from whom the ALJ admitted a report, supplemental report, and deposition testimony—diagnosed Bentley "with legal pneumoconiosis based on his smoking and employment

---

[1] "JA" citations are to the parties' joint appendix.

[2] Reports and testimony differ regarding the exact extent of Bentley's smoking habit. The ALJ found by a preponderance of evidence that Bentley "smoked about a half a pack of cigarettes per day starting in 1960 and ending in 2010, for a total of 25 pack-years." JA 168.

history; symptoms of shortness of breath, cough, and wheezing; a physical examination; pulmonary function testing revealing a moderate obstructive impairment that did not respond to bronchodilators; and a chest x-ray showing emphysema." JA 210. Dr. Raj opined that Bentley's "diagnosis of chronic obstructive pulmonary disease," or COPD, "is caused by combined exposure to coal/rock dust and smoking," and that although Bentley had a "more extensive history of smoking compared to [his] history of coal/rock dust exposure," Dr. Raj concluded that "coal/rock dust exposure [was] a significant contributing factor" to Bentley's disabling condition. JA 177.

The ALJ also noted that Dr. Raj expressed the difficulty of apportioning causation between smoking and coal dust, and pointed out that a mixed cause including mining and smoking is sufficient under *Cornett v. Benham Coal, Inc.*, 227 F.3d 569, 576 (6th Cir. 2000), to prove that mining was a cause of the legal pneumoconiosis. Specifically, the ALJ quoted our explanation that Cornett's "'obstructive ventilatory defect could have been caused by either smoking or coal dust exposure' should be viewed . . . as 'tantamount to a finding that both coal dust exposure and smoking were operative factors and that it was impossible to allocate blame between them.'" JA 177-178 (quoting *Cornett*, 227 F.3d at 576). The ALJ then quoted our conclusion in *Cornett*:

> [U]nder the statutory definition of pneumoconiosis, Cornett was not required to demonstrate that coal dust was the *only* cause of his current respiratory problems. He needed only show that he has a chronic respiratory and pulmonary impairment ["]significantly related to, or substantially aggravated by, dust exposure in coal mine employment.["]

*Id.* at 178 (quoting *Cornett*, 227 F.3d at 576). Accordingly, the ALJ found that "Dr. Raj's diagnosis of COPD, significantly related to, or substantially aggravated by, coal dust exposure, is a reasoned and documented diagnosis of legal pneumoconiosis, and I give his opinion full probative weight on that issue." *Id.*

Like Dr. Raj, Dr. Green opined that "both smoking and coal dust exposure caused [Bentley's] cough and chronic obstructive airway disease." JA 184. The ALJ explained, "Dr. Green agreed that [Bentley]'s COPD could be explained by cigarette smoking alone; however, he also asserted that the impairment could also be explained by coal dust exposure alone," and that "there is 'no sound way to quantitate the relative contribution' of the two risk factors." JA 185. Dr. Green opined that it was more likely than not that coal dust exposure was a cause of Bentley's disabling condition and "concluded that coal dust exposure played a significant role in [Bentley's] obstructive impairment" due to Bentley's seven-year history of work in low coal doing moderate to heavy labor for eight hours a day on machinery below ground. *Id.* As with Dr. Raj's opinion, the ALJ cited our decision in *Cornett* and found that "Dr. Green's diagnosis of COPD, significantly related to, or substantially aggravated by, coal dust exposure, is well-reasoned and well-documented diagnosis of legal pneumoconiosis, and I give his opinion full probative weight on that issue." JA 185.

Dr. Nader's opinion was consistent with Dr. Raj's and Dr. Green's. Dr. Nader diagnosed Bentley "with legal pneumoconiosis in the form of COPD," partially due to "coal mine employment, his smoking history of 25 pack years, his PFT values showing a 'moderate obstructive airway disease'" and Bentley's "'history of chronic cough, wheezing, shortness of breath, and mucous expectoration' which all support a diagnosis of coal worker's pneumoconiosis and COPD." JA 186. Like Drs. Raj and Green, Dr. Nader recognized that it is "not possible to distinguish the relative contribution" of either smoking or coal mining to Bentley's condition. *Id.* In finding that mining was a substantial factor in his COPD, Dr. Nadar wrote, "9 years of coal mine work exposure to respirable coal and rock dust" is significant to his COPD diagnosis, as well as Bentley's history of smoking. *Id.* Relying again on our decision in *Cornett*, the ALJ found that

"Dr. Nader's opinion is well-reasoned and well-documented. Therefore, I give Dr. Nader's opinion on legal pneumoconiosis full probative weight." JA 186.

Relying on these "reasoned medical opinion[s]" based on "objective medical evidence," *see* 20 C.F.R. § 718.202, and discounting the opinions of Drs. Dahhan and Fino on behalf of Island Creek, the ALJ found that Bentley suffers from legal pneumoconiosis, that the disabling condition arose in part from Bentley's work as a miner, that Bentley is totally disabled, and that the pneumoconiosis substantially contributes to that disability. JA 197-99; *see* 20 C.F.R. §§ 718.202, 718.203(a), 718.204(c)(1), 725.202(d)(2). Accordingly, the ALJ granted Bentley's claim and held that Island Creek is "liable for paying benefits." JA 199.

Island Creek appealed the ALJ's decision to the Board. In affirming the ALJ's award, the Board determined that the ALJ relied on substantial evidence supporting his conclusion. It reiterated the standard of review, that: "It is the ALJ's function to weigh the evidence, draw appropriate inferences, and determine credibility. Employer's arguments amount to a request that the Board reweigh the evidence which we are not empowered to do." JA 211 (citations omitted). Island Creek then petitioned this court for review.

## II. ANALYSIS

This case "arises from a claim for benefits under the Black Lung Benefits Act . . . , 30 U.S.C. § 901, *et seq*. The Act . . . provide[s] compensation and other benefits to living coal miners and their dependents when miners are totally disabled due to pneumoconiosis[.]" JA 166. To succeed on such a claim under 20 C.F.R. §§ 718 and 725, a claimant must establish that "(1) he suffers from pneumoconiosis; (2) the pneumoconiosis 'arose, at least in part, out of coal mine employment'; (3) he is totally disabled; and (4) the pneumoconiosis is a substantially contributing cause of his total disability." JA 172 (quoting 20 C.F.R. § 718.203(a)) (citing 20 C.F.R.

§§ 725.202(d)(2), 718.202, 718.204(c)(1); *Cumberland River Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 690 F.3d 477, 482 (6th Cir. 2012)). Relevant to this petition, "'[l]egal pneumoconiosis' includes any chronic lung disease or impairment . . . arising out of coal mine employment," including impairments "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." 20 C.F.R. § 718.201. Claimants may show legal pneumoconiosis via a "reasoned medical opinion" of a physician "based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories." 20 C.F.R § 718.202(a)(4).

"In black-lung-benefits cases, we review the Board's legal conclusions de novo and review the ALJ's decision (rather than the Board's) to determine whether the decision was supported by substantial evidence." *Huscoal, Inc. v. Dir., Off. of Workers' Comp. Programs, United States DOL*, 48 F.4th 480, 489 (6th Cir. 2022) (quoting *Cent. Ohio Coal Co. v. Dir., Off. of Workers' Comp. Programs*, 762 F.3d 483, 488 (6th Cir. 2014)). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1056 (6th Cir. 2013) (cleaned up). "To satisfy the substantial evidence standard, the ALJ must adequately explain why he weighed the evidence as he did." *Id.* (citing *Morrison v. Tenn. Consol. Coal. Co.*, 644 F.3d 473, 478 (6th Cir. 2011). This standard is markedly deferential: "We do not reweigh the evidence or substitute our judgment for that of the ALJ." *Dixie Fuel Co., LLC v. Dir., Off. of Workers' Comp. Programs*, 820 F.3d 833, 842 (6th Cir. 2016) (quoting *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1069 (6th Cir. 2013)). And "we will uphold the ALJ's decision where it 'rest[s] within the realm of rationality." *Id.*

(quoting *Brandywine Explosives & Supply v. Dir., Office of Workers' Comp. Programs*, 790 F.3d 657, 664 (6th Cir. 2015)).

Island Creek argues that Bentley failed to carry his burden of proof to support the ALJ's finding of legal pneumoconiosis because Drs. Raj, Green, and Nadar stated that when a retired coal miner had a history of smoking, it is not possible to determine the cause of a breathing obstruction. Island Creek further asserts that uncertainty regarding causation "invalidates the reasoning of a medical opinion." Island Creek therefore challenges Bentley's evidence supporting legal pneumoconiosis and disability causation.

This court is no stranger to disputes arising from mixed causation evidence on black lung benefits claims. *See, e.g.*, *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 599 (6th Cir. 2014); *Huscoal, Inc.*, 48 F.4th at 493-94 (6th Cir. 2022). From the time of *Cornett* (2000) to the present, we have regularly affirmed an ALJ's award of benefits supported by mixed causation evidence— even when an ALJ relies upon medical opinions that were "not wholly unequivocal," but that "present evidence that the respiratory impairments *could* be caused by coal dust." *See Crockett Colleries, Inc. v. Barrett*, 478 F.3d 350, 356, 354 (6th Cir. 2007) (emphasis added) (quotation marks omitted).

*Cornett v. Benham Coal, Inc.*, provides a good example of the reasoning in our precedents. There, Cornett applied for black lung benefits following over twenty-three years of mining employment (and, during that time, smoking half a pack of cigarettes a day). 227 F.3d at 571. Drs. Baker and Vaezy diagnosed Cornett with coal workers' pneumoconiosis and COPD and opined that "exposure to coal dust significantly contributed to Cornett's respiratory impairment," but that it was "impossible to determine the extent to which Cornett's smoking history contributed to his respiratory problems." *Id.* at 571-72. Three doctors disagreed. *Id.* at 572. The ALJ denied

benefits, assigning little weight to Drs. Baker and Vaezy because "'[t]hey based their diagnoses of coal workers' pneumoconiosis on their interpretations of an x-ray and a history of coal dust exposure.'" *Id.*

Cornett appealed the denial of benefits and petitioned this court for review. *Id.* at 572-73. We reversed the ALJ, holding that he erred by discounting the reports of Drs. Baker and Vaezy. *Id.* at 575-78. We explained that their opinions—attributing coal mining as a substantial cause and explaining that it is impossible to determine how much smoking versus mining impacted Cornett's condition—were "tantamount to a finding that both coal dust exposure and smoking were operative factors and that it was impossible to allocate blame between them." *Id.* at 576. Under 20 C.F.R. § 718.201, "[i]t is sufficient that Cornett's exposure to coal mine employment contributed 'at least in part' to his pneumoconiosis." *Id.* (quoting *Southard v. Dir., OWCP*, 732 F.2d 66, 71 (6th Cir. 1984)). Thus, *Cornett* established that although a claimant's COPD may have been caused by smoking and coal dust, the claimant "was not required to demonstrate that coal dust was the *only* cause of his . . . respiratory problems." *Cornett*, 277 F.3d at 576. Our standard is met where the claimant shows that his impairment was "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.* (quoting 20 C.F.R. § 718.201).

As with the testimony of Drs. Baker and Vaezy in *Cornett*, here, the testimony of Drs. Raj, Green, and Nadar contained both conclusions and explanations. Contrary to Island Creek's assertions, these doctors clearly stated their opinions that mining partially caused Bentley's disabling condition.[3] Their explanations acknowledged the medical impossibility of divining

---

[3] Dr. Raj: "Given this patient having extensive smoking history, this patient's pulmonary diagnosis and impairment is resulting largely from the exposure to smoking but at the same time, coal/rock dust exposure also remains a significant contributing factor in patient's pulmonary diagnosis and impairment." JA 21-22.

Dr. Green: Reporting that although a 53-year smoking history likely contributed to his COPD, he recognized that "the 7-10 year occupational history of exposure to respirable coal and rock dust [contributed] at least in part to [Bentley's

apportionment of cause. *See id.* Just like the doctors in *Cornett* and our line of precedent, Drs. Raj, Green, and Nadar relied on a combination of medical testing and their knowledge of Bentley's history of mining and smoking when coming to their conclusions. They were entitled to do so under 20 C.F.R. § 718.202(a)(4). Under *Cornett,* uncertainty regarding apportionment of cause is not fatal to these medical opinions. The ALJ's reliance on Drs. Raj, Green, and Bentley was therefore not only within the "realm of rationality," but consistent with governing regulations and with our precedent. *See Dixie Fuel Co., LLC*, 820 F.3d at 842 (quoting *Brandywine Explosives*, 790 F.3d at 664).

The ALJ weighed the medical evidence, found Drs. Raj's, Green's, and Nadar's testimony to be credible, and, with thorough consideration and explanation, determined that Bentley is entitled to benefits. *See Ramage*, 737 F.3d at 1056. We are not to reweigh evidence that the ALJ properly adjudged. *Dixie Fuel Co., LLC*, 820 F.3d at 842. The ALJ did not err in considering and weighing the evidence nor in applying our governing precedent. *See Cornett*, 227 F.3d at 576.

## III. CONCLUSION

For the reasons stated above, we DENY Island Creek's petition for review.

---

disability]," and stating "even though he only has 7 years or 10 years of coal mining and 27 pack years of cigarette smoking, I think that both of those factors contribute significantly, and it is not . . . possible to say that one factor is clearly more significant than the other. They both contribute to [his disability]." JA 102, 139.

Dr. Nadar: "One must recognize that 9 years occupational history of exposure to respirable coal and rock dust is considered as significant substantial factor in his pulmonary diagnosis[.]" JA 109.